**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Jerome Edwin BERRY,
Defendant-Appellant.**

No. 46124.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 21, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 16, 1984.

Application to Transfer Denied
Nov. 20, 1984.

**870**

Lee Thomas Lawless, Sp. Asst. Public Defender, St. Louis, Michael L. Henderson, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie L. Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Jerome Edward Berry, the appellant, was convicted in the Circuit Court of St. Louis County, Missouri, of two counts of forcible rape, § 566.030; one count of attempted robbery in the first degree, § 564.011, and one count of kidnapping, § 565.110. He was sentenced to 30 years imprisonment in the custody of the Missouri Department of Corrections and Human Resources on his conviction of Count I; on Count II, to 30 years, said sentence to be served concurrently with the sentence imposed in Count I; on Count III, to 15 years, to be served consecutively to the sentence imposed in Count I and II; and on Count IV, to 15 years, to be served concurrently with the sentence imposed in Count III. He appealed. We affirm.

On appeal six points are raised as grounds for reversal of the trial court judgment. They are:

1) The trial court erred in admitting evidence of a green baseball cap because the evidence was obtained via an illegal arrest.

2) The trial court erred in admitting evidence of oral statements made by defendant while in custody because the statements were fruits of an illegal arrest and conducted without informing the defendant that he was allowed to consult with an attorney prior to making the statements.

3) The trial court erred in overruling appellant's motion to dismiss because the trial did not begin until 265 days after arraignment, a technical violation of § 545.789, RSMo.

4) The trial court erred in failing to submit instruction No. A., the MAI–CR2d 3.42.

5) The trial court erred in overruling the defendant's objection to the direct examination of Joseph Siscal, the arresting officer, on whether or not the defendant had previously used an alias.

6) The trial court erred in overruling defendant's offer of proof of hospitalization of appellant's sister prior to the night of the crime because such evidence corroborates appellant's alibi.

Appellant does not challenge the sufficiency of the evidence to support the convictions, so a brief statement of the evidence will be sufficient.

According to the evidence the victim, Ms. V___ R___, at about 9:30 p.m. on August 3, 1981, was en route to the house of a friend of her brother's in University City, Missouri. As she was walking across a lot adjacent to a Dairy Queen store near the intersection of Leland and Kingsland Avenues she was approached by a man with a gun who demanded all her money. She told him she had no money but gave him her purse. He identified himself as a po-

lice officer who was on duty because of rapes and robberies in the area and insisted on accompanying her to the house of the friend of her brother. As they proceeded together she realized he was leading her in the wrong direction, and when she protested he put his hand in his pocket, removed the gun, put it in her back, and forced her into the basement of an apartment on Clemens Avenue where he raped her twice over a period of two hours.

Berry's defense was alibi.

■ Appellant has failed to preserve his first two points for review because he has not favored us with a transcript of the evidence adduced at the hearing with respect to his motion to suppress the green baseball cap or oral statements he made following his arrest. *State v. Cleveland,* 627 S.W.2d 600, 601[2] (Mo.1982); *State v. Smith,* 612 S.W.2d 895, 897[1] (Mo.App. 1981). Furthermore, defense counsel failed to object at trial to the testimony touching on the statements made by appellant after he was taken into custody. "When a motion to suppress evidence is denied and the evidence is offered, a defendant must object at the trial to preserve his contentions for appellate review." *State v. Summers,* 660 S.W.2d 772, 773[1] (Mo.App.1983).

In the exercise of our discretion we choose not to review these points as "plain error" pursuant to Rule 30.20, because we perceive no manifest injustice nor miscarriage of justice in appellant's conviction of these charges.

Appellant next contends that the trial court erred in denying his motion to dismiss because he was not brought to trial within 180 days of arraignment as required by § 545.780, RSMo 1978, the Speedy Trial Act.[1] According to his calculations only 52 days may be deducted from the 265 days between arraignment and trial. If he is correct the state did not bring him to trial until 213 days had passed from the date of his arraignment. However, in calculating the number of days which passed between his arraignment and trial appellant did not exclude 90 days for continuances granted at his request,[2] and, if these days are deducted from the 213 days previously noted, he will have been brought to trial within 123 days, well within the 180 days mandated by the statute.

However, despite the fact the record demonstrates that 90 days were consumed by continuances granted at his request, appellant contends that those days may not be excluded in computing the 180 day period because the trial court failed to state the reason for granting these continuances as required by § 545.780.3(5)(a).[3]

In none of the four continuances granted defendant did the trial court set forth its

---

1. The 82nd General Assembly repealed the Speedy Trial Act § 545.780, RSMo 1978, by Senate Bill 602, effective June 7, 1984, and substituted instead a requirement that a defendant's case be set for trial as soon as reasonably possible after he announces he is ready for trial and files a request for a speedy trial, RSMo Supp. 1983, p. 300.

2.

**TRIAL SCHEDULE**

| DATE | DAYS ELAPSED | EVENT |
|---|---|---|
| 9/2/81 | | Arraignment |
| 10/5/81 | 33 | Continued at defendant's request to 11/16/81 |
| 10/13/81 | 41 | PRETRIAL MOTIONS FILED |
| 11/5/81 | 64 | Continued at defendant's request to 1/18/82 |
| 12/4/81 | 93 | PRETRIAL MOTIONS DENIED |
| 1/13/82 | 133 | Continued at defendant's request to 2/8/82 |
| 2/16/82 | 167 | Continued by parties' request to 3/29/82 |
| 4/23/82 | 233 | Continued by defendant's request to 5/10/82 |
| 5/25/82 | 265 | TRIAL |

EXCLUDABLE DAYS
52—Pretrial Motions § 545.780.3(1)(c).
90—Continuances for defendant

NONEXCLUDABLE DAYS
35—Continuance for Parties because no reasons for continuance given § 545.780.3(5)(a).

3. § 545.780(5)(a) provides:

"Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant's attorney, or the defendant, or at the request of the prosecuting attorney if the continuance is consented to by

reasons for finding that the ends of justice served by the granting of the continuances outweigh the best interests of the public and the defendant to a speedy trial. Appellant relies on *State v. Richmond*, 611 S.W.2d 351, 355 (Mo.App.1980) [4] as authority for his position. He concedes, however, that he has the burden of showing that the failure to have the trial commence within the time limits mandated by the statute was "occasioned" by the state. The Supreme Court has so held in *State v. Franco*, 625 S.W.2d 596, 601[2] (1981) and *State v. Newberry*, 605 S.W.2d 117, 123–124[9] (1980).

Even where the trial court fails to set forth its reasons for granting defendant a continuance at his request, the burden is on the defendant to show that the delay in bringing him to trial was *"occasioned"* by the state. *Franco*, supra, *Newberry*, supra; and *State v. Bunch*, 656 S.W.2d 750, 751[2] (Mo.App.1983). Appellant has utterly failed to meet this burden. We rule this point has no merit.

Appellant complains that the trial court erred in failing to submit a circumstantial evidence instruction—MAI–CR 3.42 —which he tendered. This point has no merit. MAI–CR 3.42 need not be given where there is direct evidence of the crime charged. *State v. Leonard*, 671 S.W.2d 365, 366[1] (Mo.App.1984). There was direct evidence of the crime charged in this case. The victim's testimony in this case is direct evidence of the crimes charged. She identified the appellant as the man who abducted her, raped her, and attempted to rob her. There was no error in the trial court's failure to submit a circumstantial evidence instruction.

Appellant charges that the trial court erred in overruling his objection to the testimony of a police officer, Joseph Siscal, that he had on a prior occasion used the name "James O'Connor" as an alias, thereby prejudicing the jury against appellant "by casting aspersions on his character."

During the course of the state's case, Joseph Siscal, a University City Police officer, who was engaged in the investigation of this case, and another University City police officer, Chris Beckett, were staked-out in the vicinity of the scene of these crimes at 6267 Clemens Avenue, University City, Missouri, during the evening hours of August 4, 1981. They were looking for the man who had abducted V___ R___ because he had ordered her to meet him again at the scene of the crime at 9:30 p.m. the next evening and to deliver $1,000.00 to him. Both police officers were dressed in blue jeans and were sitting under a tree in an adjacent apartment building. They were looking for a black male, tall, thin, wearing a green baseball cap, and black dress shoes, fitting the description of the rapist given to them by the victim.

While so engaged the police officers observed a man walk past the apartment building they were watching two or three times and then take up a position in a gangway between two buildings. He stood in the shadows and would step out of the shadows and look up and down the street; if he saw a car headlight or someone com-

the defendant's attorney or the defendant and if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the benefits of a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this section unless the court sets forth, in the record of the case, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."

4. This court, in *State v. Hulsey*, 646 S.W.2d 881, 882 fn. 2 (Mo.App.1983) expressed doubts on grammatical grounds concerning the Western District's interpretation of § 545.780.3(5)(a) requiring that *any period of delay* resulting from the granting of a continuance is to be included in the 180 day trial limitation period unless the judge finds and sets forth his reasons for finding that the ends of justice served by granting the continuance outweigh the benefits of a speedy trial.

ing he would slip back into the shadows out of sight. After observing him for 5 or 10 minutes they walked up to the man, identified themselves as police officers, showed him their badges and identification and inquired what he was doing there. The man identified himself as Jerome Berry and stated he was waiting for a friend, "James O'Connor."

At trial the following questions were asked by the prosecutor and Officer Siscal gave the following answers:

Q. Did you ever come up with anyone that used the name of James O'Connor before?

A. Yes, sir.

Q. Would you tell this jury to your knowledge who had used the name James O'Connor, who had given that name before?

At that point defense counsel objected on the ground of "hearsay." A bench conference followed. During this conference defense counsel renewed his objection to the question on the grounds it was hearsay and "brings in evidence of other crimes, evidence of other arrests." The objection was overruled and the following dialogue took place.

Q. (Assistant Circuit Attorney) To your knowledge who had ever given the name James O'Connor before?

A. Jerome Berry

Officer Siscal then identified appellant as the man he had seen in the gangway the night of August 4, 1981.

Appellant contends that this evidence, that he used another name, constituted evidence of separate and distinct crimes for which he was not on trial, and that the testimony of a police officer concerning prior knowledge and involvement with a defendant would promote speculation among jurors of prior crimes by the defendant.

We disagree. The Supreme Court of Missouri has said in *State v. Pitchford*, 324 S.W.2d 684, 688 (1959): "It is well known that most police officers have a wide acquaintance among the citizenry in general and the fact that a person is known to a police officer does not necessarily convey the impression that he has a criminal record." See also *State v. Reilly*, 674 S.W.2d 530 (Mo.1984).

The circumstances under which either of these police officers knew appellant to use the name "James O'Connor" were not developed and there was no evidence to cause the jury to believe it was while he was engaged in some criminal activity, nor at a time when he was arrested.

Although appellant contends in his point relied on that Officer Siscal was permitted to testify that he had previously "used an alias," we have searched the record and have failed to find the term "alias" anywhere in the testimony of Officer Siscal or Officer Beckett.[5]

■ The term "alias" is derived from the term "alias dictus" which literally means "otherwise called" and indicates that accused is called by one or the other names. *State v. Loston*, 234 S.W.2d 535, 539[11] (Mo.1950); *State v. Harvey*, 26 N.C.App. 716, 217 S.E.2d 88, 90[6] (1975). See also *John v. Tribune Co.*, 24 Ill.2d 437, 181 N.E.2d 105, 107[3] (1962); *Tucker v. State*, 42 Ala.App. 163, 184 So.2d 366, 367[1] (1966). The question whether the reference to aliases is necessarily prejudicial to a defendant in a criminal case has surfaced most frequently in cases where the aliases are pled in an indictment or information and the charging document, including the aliases, is read to the jury by the prosecutor, or where the aliases are included in the instructions submitted to the jury.

Most of the reported cases considering the question seem to agree that while the

5. The term "alias" appears only on one occasion in the record and this during the bench conference out of the jury's hearing when the objection to Officer Siscal's testimony was being discussed.

use of such aliases may be derogatory to the reputation of the defendant and should be avoided, the question of whether it constitutes prejudicial error should be determined on a case by case basis taking into consideration the totality of the circumstances.[6]

In *State v. Richards*, 334 Mo. 485, 67 S.W.2d 58, 62[14] (1933) where the information alleging "Tom Richards alias Tom Young" was read to the jury by the prosecutor and was included in the instructions, the court said, 1.c. 62: "The evidence discloses that the reference to an alias should be omitted."

*State v. Loston*, supra, was a case where the instructions included a reference to the defendant as "Martha Loston, alias Martha Washington." The appellant contended that the use of an "alias" was prejudicial to her in that it created an inference that she had a criminal record. The court held that the use of one alias does not imply that the defendant belongs to the so-called criminal class, that the use of the alias was justified by the evidence and did not suggest that she had a criminal record. It further held that where the defendant has made timely objection and has preserved the issue in his motion for new trial, the principle announced in *Petrilli v. U.S.*, 129 F.2d 101 (CA. 8, 1942), that where a reference to the aliases has crept into the proceedings, the situation on appeal should not be controlled by the application of any abstract principle, but by a concrete appraisal of the significance of the incident in relation to the processes of the trial on a whole. From its study of the record the court concluded that there was no error because the evi-

dence authorized the reference in the instruction to defendant's alias. See also: *State v. Daniels*, 347 S.W.2d 874, 879 (Mo. 1961), 87 A.L.R.2d 1208, cert. denied 369 U.S. 862, 82 S.Ct. 951, 8 L.Ed. 19: *State v. Butler*, 353 S.W.2d 698 (Mo.1962).[7]

We believe these cases control and the trial court did not commit error in overruling appellant's objection to the testimony of Officer Siscal that appellant was known to have used the name "James O'Connor" on a prior occasion.[8]

■ The evidence that appellant had previously used the name "James O'Connor" did not in any way suggest he did so in connection with any criminal activity. The word "alias" was never used in the presence of the jury. The mere use of an alias is not a crime in this state.

■ We believe, as the state argues, this evidence was admissible on the grounds that it might show a consciousness of guilt. *State v. Russ*, 599 S.W.2d 103, 104[3] (Mo. App.1980), held that the use of a false name immediately after being arrested and accused of a crime was relevant to show defendant's consciousness of guilt. While the question before us is not identical, we believe that the evidence authorized the same conclusion. The police officers were staked-out at the scene where the rapist had directed his victim to deliver $1,000.00 to him, and at the time she was directed to deliver the money. He was acting suspiciously. When the officers stopped him and questioned him about his reasons for being at the scene he informed them it was to meet his friend "James O'Connor," a

---

6. See: Anno. 87 A.L.R.2d 1217. *Propriety and effect, in criminal cases, of use of alias of accused in instructions to jury.*

7. The Court of General Sessions, New York County, in *People v. Klukofsky*, 201 Misc. 457, 114 N.Y.S.2d 679, (1951) sustained defendant's motion to strike from the indictment his alias when the defendant had no prior convictions because it opined that it was a reasonable assumption defendant would be prejudiced by the word alias, which by common usage connotes

some criminal activity. The opinion ordered that the words "also known as" should be substituted in lieu of "alias."

8. Appellant abandoned his hearsay objection on appeal. Evidence by which a person is known is not within the rule excluding hearsay evidence. *State v. Valentine*, 506 S.W.2d 406, 409[1, 2] (Mo.1974); *State v. Shields*, 619 S.W.2d 937, 940[10] (Mo.App.1981).

name both officers knew appellant had previously used. Appellant did not know where his friend "O'Connor" lived, but told the police officers it was in the area. Officer Beckett testified he could find no one by that name in the area. Under these circumstances we believe this evidence was admissible for consideration by the jury of whether appellant's use of the name "James O'Connor" was evidence of his consciousness of guilt.

We rule this point against appellant.

Appellant's final point is that the trial court erred in refusing to admit testimony of the hospitalization of his sister at St. Louis County Hospital on July 28, 1981, six days prior to the date on which this crime occurred, because this evidence would corroborate his alibi.

Appellant testified that on the evening of August 3, 1981, his sister, Tina, was ill and he took her to the St. Louis County Hospital. However, by the time they arrived there she was feeling better so she did not actually go into the hospital. When he was asked whether he had taken her to the hospital sometime previously, he replied that he had, "the week before." When asked why, the state objected on the grounds that it was irrelevant because it "happened the week before." The objection was sustained. Appellant made an offer of proof that if permitted to answer the question, appellant would testify that he took his sister to the hospital on August 3rd for abdominal pains, and that they had taken her to the hospital the week before for the same thing, abdominal pains. Counsel for appellant stated that he was using this evidence to show that appellant's sister had had this pain before, that she'd seen a doctor, and it was not something that required hospitalization. The court ruled said evidence was irrelevant and sustained the objection.

Evidence is relevant if it logically tends to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principal issue. *State v. Wood,* 596 S.W.2d 394, 402[19] (Mo. banc 1980). Appellant argues that the proffered testimony would prove the fact that his sister may have been ill on August 3, 1981, the night of the crime. Even if this were so, such a premise fails to corroborate his alibi that he took her to the hospital that night. His sister did not testify in this case to support appellant's alibi. Had she done so, and had she testified that on the night of the crime she was ill and appellant took her to the hospital, then the relevance of her testimony would have been established because it would corroborate appellant's testimony on this issue. The trial court ruled correctly.

Judgment affirmed.

PUDLOWSKI, P.J., and SMITH, J., concur.