STATE of Missouri,
Plaintiff-Respondent,

v.

Roosevelt IVY, Defendant-Appellant.

No. 49518.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 22, 1986.

Rehearing Denied May 20, 1986.

Doris Gregory Black, Public Defender, St. Louis, for defendant-appellant.

Lee Allison Bonine, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Defendant, Roosevelt Ivy, appeals from a jury conviction of rape, a Class B felony, in violation of Section 566.030 RSMo 1978. Defendant was sentenced to fifteen years imprisonment. Four points are presented for review: (1) The trial court erred in limiting defendant's cross-examination of the victim's mother by prohibiting evidence of specific incidences of conduct directly related to the credibility of the victim's testimony; (2) the trial court erred in refusing defendant's instruction on circumstantial evidence; (3) the trial court erred in denying defendant's motions for judgment of acquittal; and (4) the trial court erred by permitting the state to introduce evidence of a prior conviction of defendant. We affirm.

Defendant was charged with having sexual intercourse with a female child, L.V., who was less than 14 years old. Defendant entered a plea of not guilty and the trial commenced on November 13, 1984.

On June 2, 1984 the victim and her cousin, S.[1] were taken by Betty, the victim's mother and Sharon, an older sister of the victim, to Jake Corbin's Tavern on Manchester Avenue in St. Louis City. They arrived at approximately noon. While the victim's mother and older sister, Sharon sat at a table drinking beer with friends, L.V. and her cousin S danced, listened to the jukebox, drank soda and ate potato chips. The two children often checked in with their mothers during their stay. The victim did not leave the tavern at any time during the day until her family prepared to leave.

Sometime after midnight the victim, her mother, cousin and sister decided to leave the tavern. Outside, Sharon conversed with friends. Betty expressed reluctance to drive her car because of her drinking.

Appellant then approached the group and offered Betty and her family a ride to the house of Betty's son-in-law, Jack.

Betty and appellant made arrangements to split a case of beer. The beer was purchased before leaving Jake's. Betty, Sharon, L.V. and S then got inside appellant's car. L.V. was seated between appellant and her mother in the front seat. Sharon and S were seated in the back. Upon arrival at Jack's house, Betty departed the car to see if Jack and his family were awake and dressed. Sharon and S then departed the car, but L.V. remained.

Appellant pulled his penis out of his pants and asked L.V. if she wanted some of it. He then drove to a dead end street and parked the car. Appellant then instructed L.V. to get into the back seat of the car and undress, as he got out of the car to get a flashlight and towel from the trunk. Appellant then joined L.V. in the back seat where he removed her blouse and bra and sucked on her breasts. He then wiped her off with the towel. Appellant then examined the victim's genitals using the flashlight after which he raped her.

Appellant and the victim then drove to a 7–11 store where he bought her a soda and potato chips. Appellant then drove back to son-in-law Jack's house and parked the car across the street.

Meanwhile, L.V.'s family, who at first thought appellant was looking for a place to park, became worried and called the police. The police patrolled the neighborhood looking for appellant's car. When they returned to Jack's house, they discovered L.V. and the appellant sitting in his car.

L.V. advised Officer Michelle Barnes, of the St. Louis Metropolitan Police Department, of the incidents that occurred. Officer Barnes then escorted L.V. and her mother to Children's Hospital where the victim was examined by Dr. Melissa Levy. Dr. Levy determined that L.V. had had

---

**1.** A female under the age of 14 and daughter of Sharon, the victim's older sister.

sexual contact, including penetration and ejaculation.

Appellant first contends that the trial court erred in limiting appellant's cross-examination of the victim's mother by prohibiting evidence of specific incidences of conduct directly related to the credibility of the victim's testimony. During the trial, appellant was prohibited from introducing evidence of specific acts of the victim relating to witness' credibility. Specifically, appellant desired to elicit testimony from the victim's mother that the victim had a propensity to lie, to expose herself at school, and to write obscenities on the school blackboard. These attempts to attack the morality of the victim were restricted by the trial court to show only that the victim had behavioral problems and had a tendency to make things up.

■■■ The credibility of a witness cannot be attacked by showing specific acts of immorality. *State v. Williams*, 513 S.W.2d 718, 721[6] (Mo.App.1974); *State v. Schupp*, 677 S.W.2d 909, 913[9] (Mo.App. 1984). Further, the credibility of a witness for truthfulness may not be impeached by showing that her general moral character is bad. *State v. Miller*, 680 S.W.2d 253, 256[7] (Mo.App.1984). It is also within the trial court's discretion to limit the scope of cross-examination to preclude attempts to elicit attacks on general credibility or irrelevant matters. *State v. Russell*, 625 S.W.2d 138, 141 (Mo. banc 1981); *State v. Gilmore*, 681 S.W.2d 934, 940[6] (Mo.App. 1984).

■■■ Because appellant's attacks were to be conducted to show specific acts of immorality and general moral character, it was not an abuse of discretion to limit the scope of cross-examination on those points. We rule this point against appellant.

Appellant, in his second point contends that the trial court's refusal to give the proffered circumstantial evidence instruction –MAI–CR 3.42– was error. In support of his position he cites *State v. Lasley*, 583 S.W.2d 511, 514 (Mo. banc 1979), in which it was held that it is prejudicial error to fail

to give such an instruction if it is warranted. We now address the issue of whether the circumstantial evidence instruction was warranted in this case.

This court has previously held that the circumstantial evidence instruction need not be given when there is direct evidence of the crime charged. *State v. Leonard*, 671 S.W.2d 365, 366[1] (Mo.App.1984). In *State v. Berry*, 679 S.W.2d 868 (Mo.App. 1984), this court held that the circumstantial evidence instruction need not be given when the victim testifies as to what occurred because that is direct evidence of the crime charged. *Id.* at 872[4].

■■■ In the instant case, the victim identified appellant as the person who raped her. Applying *Berry*, infra, this testimony by the victim is direct evidence thereby rendering the circumstantial evidence instruction unnecessary. We hold that the trial court's refusal to give the proffered circumstantial evidence instruction was not error.

Appellant next contends there was insufficient evidence to support a guilty verdict of rape against appellant. He contends the State's case is based solely on circumstantial evidence and the uncorroborated testimony of the victim. We have already addressed the issue of circumstantial evidence and will now direct our efforts toward the allegation of sufficiency of the victim's uncorroborated testimony.

The standard of review of this court in a criminal case is whether there was sufficient substantial evidence to support the verdict. *State v. Ginnery*, 617 S.W.2d 115, 116[1] (Mo.App.1981). Whether a jury's verdict in a criminal case is against the weight of the evidence is not a matter reviewable by an appellate court. *Ginnery*, at 116[1]. In determining if evidence is sufficient to support a conviction the evidence and all reasonable inferences must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. *State v. Williams*, 600 S.W.2d 120, 121[1] (Mo.App.1980); *State v. McGee*, 592 S.W.2d 886, 887[1] (Mo. banc 1980).

■ Direct evidence of the crime was given by the victim. This testimony was uncorroborated. However, the uncorroborated testimony of a prosecutrix is sufficient to sustain a rape conviction unless her testimony is so inherently contradictory as to cloud the mind of the court with doubts or is so unconvincing that it is extremely doubtful. *State v. Salkil*, 659 S.W.2d 330[2–3] (Mo.App.1983). In *State v. Harvey*, 641 S.W.2d 792 (Mo.App.1982) it was held that evidence, including the testimony of the 12-year old victim, that defendant "tried to get his penis in," and the victim's 9-year old sister's testimony to the effect that an attempt at rape occurred, was sufficient to sustain an attempted rape conviction, despite discrepancies in the girls' testimony as to date of the incident, and the clothing worn by both the victim and the defendant. *Id*, at 800[11].

■ In the present case, the victim's testimony was not contradictory with regard to the essential elements of the crime of rape. The victim's recount of the rape never wavered when she was testifying. She testified that the appellant drove his car to a dead end street where he raped her. It is therefore the opinion of this court that there was substantial evidence to support the verdict of the jury and that the trial court did not err in denying appellant's motions for judgment of acquittal.

Appellant's fourth point alleges the trial court erred in allowing the State to introduce evidence of an alleged prior conviction against him without the proper foundation. During cross-examination of appellant by the prosecutor, inquiries were made of appellant regarding prior convictions. The appellant denied any convictions. He specifically denied ever being found guilty of possession of marijuana. The state then called the court clerk, Betty Robinson, as a witness. The clerk produced the court's file on appellant's conviction for possession of marijuana. Appellant objected to the introduction of this file as evidence because the file contained no identifying information other than the name, Roosevelt Ivy.

It is well established that a defendant's prior plea of guilty may be established by the testimony of a deputy clerk of the circuit court who produces the original court file. *State v. LaPlant*, 673 S.W.2d 782, 784[3] (Mo. banc 1984). In *State v. Williams*, 524 S.W.2d 137, 138 [1] (Mo.App. 1975), the court held that when the name on a court record and the name of the person being impeached are the same, the state has raised the presumption of identity.

■ In the instant case, appellant correctly concedes that a defendant's credibility may be impeached by cross-examination as to prior convictions, and if the defendant denies the conviction, the prosecutor may prove that the defendant was in fact previously convicted. Section 491.050 RSMo 1978. The state offered evidence of a prior conviction of appellant. Consistent with *LaPlant*, supra, the original court file establishing a prior plea of guilty by appellant was introduced as evidence by the court clerk. In accordance with *Williams*, supra, the presumption of identity was established by the state because the name Roosevelt Ivy appeared on the original record of conviction.

■ The presumption of identity of person arising from identity of name is prima facie only and is liable to be shaken by the slightest proof of facts or showing of circumstances which produce a doubt of identity. *Jones v. Phillips Petroleum Co.*, 186 S.W.2d 868, 873[2] (Mo.App.1945); *Myles v. St. Louis Public Service Co.*, 52 S.W.2d 595, 598[6] (Mo.App.1932). However, once the presumption of identity arose it was incumbent on appellant to come forward with evidence to rebut the presumption. This he did not do. Therefore, we hold that the trial court did not err in permitting the state to introduce into evidence the court record of appellant's prior conviction for impeachment purposes.

Judgment affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.