STATE of Missouri, Plaintiff-Respondent,

v.

John H. PETERS, Defendant-Appellant.

No. 14098.

Missouri Court of Appeals, Southern District, Division Two.

June 11, 1987.

David Robards, Joplin, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

## PER CURIAM:

This is a cattle rustling case. Defendant John Peters has been found guilty of stealing as defined and denounced by § 570.-030.3(3)(h), RSMo 1978. His punishment has been assessed at imprisonment for a term of twelve (12) years. Defendant appeals. We affirm.

Richard Granger lived on a farm near Stella in Newton County, Missouri. On Monday night, August 15, 1983, Granger had 31 head of Holstein cattle and one black Angus cow on his property. Granger owned the stock jointly with his father, Dick Granger. On Tuesday, Dick Granger went to check the cattle and was unable to find them. On Wednesday morning the Grangers, father and son, determined the cattle were gone. They reported the loss to the Newton County Sheriff.

The Grangers discovered some very green hay in the corral where the cattle had been put. They had not left the hay in the corral. Some blackberry bushes had been flattened out, and Dick Granger found a red taillight lens which looked as if it had come from a truck or a trailer. Dick Granger also discovered some tire tracks near the corral. Thirty head of the Grangers' cattle were subsequently located by authorities and were identified by the Grangers. Dick Granger was able to identify the marks left by the yellow ear tags with which he had marked his cattle. No one had been given permission to remove or sell the Grangers' cattle.

Harold Sargent owned and operated a livestock auction in Springdale, Arkansas. Sargent identified a sales slip dated August 19, 1983. The sales slip was given to the defendant by Mr. Sargent's business. It identified defendant as consignor of livestock. Sargent had known the defendant for 20 to 25 years, but had no recollection of the particular incident. Sargent's records indicated that 20 head of cattle were sold and two checks were issued, one to Mary Siler, the other to defendant as payee.

James Bailey owned and operated the North Arkansas Livestock Auction at Green Forest, in Carroll County, Arkansas. Mr. Bailey's records indicated that the defendant had consigned 12 head of Holstein steers to Bailey's auction barn and those cattle had been sold on defendant's account on August 18, 1983. A check was made to the defendant. Both Sargent and Bailey testified that a consignor was not required to make proof of his ownership of the livestock.

Newton County Sheriff Joe Abramovitz went to the defendant's farm about September 1, 1983, in company with other officers. The defendant was given a *Miranda* warning. He gave the officers permission to search his farm. When he was asked about the 12 head of Holsteins the officers had found the day before, the defendant stated he had raised those cattle "by buck-

et" and had kept them on land occupied by John and Mary Siler prior to the sale. The next day, Sheriff Abramovitz questioned the defendant further about the Granger cattle. The defendant told the sheriff that if he would continue checking the sale barns in north Arkansas, the rest of the cattle would be found.

On September 10, 1983, the defendant made a request to talk to the sheriff. The defendant made a statement to Sheriff Abramovitz in the presence of the sheriff, two deputies and the defendant's daughter, Patty. We quote material parts of this statement, which was read to the jury. The initials JA signify Sheriff Abramovitz; the letters JP indicate the defendant; BB indicates Bob Barnett, a deputy sheriff.

"JA  This is an interview with John Peters. Present is Bob Barnett and John Trimble, Newton County Deputy Sheriff's, Sheriff Joe Abramovitz, John's daughter Patty and yourself, John. Patty told us you wanted to come down and visit with us a little bit about this.... *Your lawyer is not in town, do you want him present with you?*

JP  I'd like for Patty to be able to go on home, Joe, because she has nothing to do with this. I sold the cattle and I sent her to town to cash the checks and thats [sic] ...

JA  Alright, before we do anything, I want Bob to advise you of your rights and then we will go into this, and if at anytime you want to stop, we will stop. OK.

JP  OK.

BB  The Sheriff's Office is the place, the date is 9–10–83, and the time is 12:21 p.m. John this is a Miranda Warning. You have the right to remain silent, anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and to have him present with you while you are being questioned. If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning if you wish. You may decide at anytime to exercise these rights and not answer any questions or make any statements. Do you understand each of these rights as I have explained them to you?

JP  Yes, sir.

BB  Having these rights in mind, do you wish to talk to us now?

JP  Yes, sir. If you will turn my daughter loose.

BB  Well, we are not making any bargains like that as far as that goes, cause that makes it look like we are trying to force you to talk, and were [sic] not.

\*   \*   \*   \*   \*   \*

JA  Well, before I talk to you anymore, I'll tell you what I know. You have got to realize what your rights are John.

JP  I told the man I realize what my rights are.

JA  OK, and do you want to talk about this?

JP  I will talk to you about this.

JA  Alright, good enough.

\*   \*   \*   \*   \*   \*

JA  Yep, you told me that if I would continue to look that I would find the rest of those cattle.

JP  I sure did and I told you where to look.

JA  Yep, you did.

JP  As far as I'm concerned ...

JA  So Patty didn't know anything about this?

JP  No, she didn't.

JA  OK. John I know that you couldn't have done all of this yourself, and I hate to see you go down for all of it.

JP  Well, you are ... cause I done it all myself.

JA  How could you have loaded all those cattle by yourself.

JP  Very easily. Turn me loose and I'll show you.

JA  Well, I know ...

JP  She had nothing to do with it.

JA  Are you saying that you stole these cattle by yourself?

JP   I'm not saying that I stole them, I'm telling you that I sold em, by myself." (Our Emphasis.)

\*    \*    \*    \*    \*    \*

Johnny and Mary Siler also testified upon trial. Johnny testified the defendant had kept some cattle on his place, but not the kind stolen from the Grangers. Over strenuous objection, Johnny Siler was permitted to testify that the defendant, referring to a neighbor's cattle, once stated "Ought, some stormy night, [to] load them up and take them to the sale."

Mary Siler testified that she left her husband and moved to Montana on July 5, 1983. Concerning the check made out to her by the Farmer's Livestock Auction in Springdale, Arkansas, Mary stated she had never been there and the endorsement on the check was not her signature. She also stated that the defendant never kept any Hosltein cattle on her property.

In his first point, the defendant argues that the trial court erred in denying his motion to suppress the recorded statement and admitting that statement in evidence at the trial. The defendant advances two distinct assignments of error. First, he maintains the statement was coerced because he made the statement to exonerate his daughter. Further, defendant asserts he did not knowingly and intelligently waive his right to counsel.

The defendant has asserted that his confession—or admission—was coerced for the first time on this appeal. While counsel did move to suppress the statement for other reasons, the issue of coercion was not raised in the motion to suppress, at the suppression hearing, during the trial or in the motion for new trial. The point may therefore be reviewed only as a possible plain error under Rule 29.12(b). Rule 29.-11(a); *State v. Harris*, 620 S.W.2d 349, 354[7] (Mo. banc 1981); *State v. Pospeshil*, 674 S.W.2d 628, 632[1–4] (Mo.App.1984); *State v. Watson*, 672 S.W.2d 701, 705[6] (Mo.App.1984).

■   Once the admissibility of an admission or confession is challenged, the State bears the burden of proving the voluntari-ness of the confession by a preponderance of the evidence. *State v. Buckles*, 636 S.W.2d 914, 923[16] (Mo. banc 1982); *State v. Diercks*, 674 S.W.2d 72, 78[6] (Mo.App. 1984). The test for voluntariness applicable here is whether the totality of the circumstances deprived defendant of a free choice to admit, to deny, or to refuse to answer, and whether there was physical or psychological coercion of such degree that the defendant's will was overborne at the time he confessed. *State v. Buckles*, 636 S.W.2d at 923[16]; *State v. Higgins*, 592 S.W.2d 151, 158[8] (Mo. banc 1979).

■   We have set out enough of the statement, we believe, to make it clear that the defendant was advised of his rights and that he stated he understood those rights. When the defendant stated he would talk to the officers "if you will turn my daughter loose," deputy Barnett indicated the officers would make no such bargain for fear of creating the impression of coercion. Further, a promise that a third person will not be prosecuted or arrested if the defendant confesses is "not a promise of worldly advantage such as would invalidate [a] confession." *State v. King*, 342 Mo. 1067, 1078, 119 S.W.2d 322, 328[9, 10] (1938). See also *Miller v. State*, 473 S.W.2d 413, 418[5–7] (Mo. 1971); *State v. Pippenger*, 708 S.W.2d 256, 266 (Mo.App.1986).

■   The defendant also argues that his statement was inadmissible because the sheriff did not obtain a specific waiver of the assistance of retained counsel before taking the statement. This point is properly preserved, but we find it to be without merit. At the time the statement was made, the defendant had already retained private counsel. The defendant sent his daughter to advise the sheriff that he wanted to talk. Defendant was told his counsel was out of town and was asked if he wanted his lawyer present. Although the defendant made no direct reply, he repeatedly asserted that he understood his rights, and proceeded with his admission. When it can be fairly said that the accused initiates the conversation which produces the confession and is advised of his rights, understands them and knowingly and intel-

ligently waives them, the confession is voluntary and admissible. *State v. Boggs,* 634 S.W.2d 447, 452–53[1–3][4, 5][6] (Mo. banc 1982); *State v. Oldham,* 618 S.W.2d 647, 648–49 (Mo. banc 1981); *State v. Thomas,* 698 S.W.2d 942, 947[3] (Mo.App.1985). Such is the case here, and the confession or admission was properly received.

■ For a final point, defendant assigns as prejudicial error the solicitation of a statement of intention made by the defendant to Johnny Siler at some time before the cattle theft occurred. Over counsel's objection, the State was permitted to ask Siler the following question:

"Q. Well, now, I want to take you back in time and ask you if you did have some conversation with the defendant concerning some neighbors' cattle?

A. Yeah, I did.

Q. Just tell the jury what John Peters said about those cattle.

A. Well, uh, he looked at them and said, 'Ought, some stormy night, load them up and take them to the sale.'"

Citing us to *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304 (banc 1954), and other cases concerning admission of evidence of the commission of other crimes, counsel asserts that Siler's statements came within none of the exceptions permitting the admission of such evidence and violated the defendant's right to be tried solely upon the charge contained in the information.

Both the State and the defendant are quite mistaken about the basis of admissibility of such evidence. The State indicated it wished to elicit the defendant's statement because it tended to prove "common scheme and intent and not directed toward any specific act but the method used." The two principles of admission are distinct. It is sometimes said that it is permissible to prove other crimes by the accused so nearly identical in method as to mark them as the handiwork of the accused. McCormick, Evidence § 190, pp. 559–60 (Cleary ed. 1984). However, if such evidence is to be admitted, the pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature. *Id.* at p. 560.

Statements of intention may be received, on the other hand, subject to certain limitations as to remoteness, to prove that the plan, design or intention of the declarant was carried out. McCormick, Evidence § 295, p. 847. 6 Wigmore, § 1732, p. 157 (Chadbourn rev. 1976). *State v. Fish,* 50 S.W.2d 1020 (Mo.1932); *State v. Craft,* 299 Mo. 332, 344–45, 253 S.W. 224, 227–28[9] (1923); *State v. Briscoe,* 646 S.W.2d 424, 427 (Mo.App.1983). Without distinguishing these two rules, the defendant now argues that his statement was inadmissible and prejudicial because it tended to show him guilty of offenses other than that with which he was charged.

We are inclined to believe the statement was inadmissible; the statement was not shown to have been contemporaneous, or substantially contemporaneous, with the theft of the Granger cattle; it is not clear that the defendant was referring to the Granger cattle. Defendant's method of cattle rustling was not so unusual and distinctive as to be like a signature. These are not the objections raised, however. Defendant objects that he was shown to have committed other crimes. Taking the point as made, the trial court's error is subject to the rule that the mere mention of another offense is not per se prejudicial in the trial of a criminal case; it is within the discretion of the trial court to determine the extent of jury prejudice resulting from evidence of defendant's other crimes. *State v. Lue,* 598 S.W.2d 133, 137 (Mo. banc 1980); *State v. Martin,* 624 S.W.2d 879, 882 (Mo.App.1981). The error complained of was assigned in paragraph nine of the defendant's motion for new trial; the motion for new trial was argued before the trial court. The trial court was in a better position than we are to judge the prejudicial effect of the error. We find no abuse of discretion. Accordingly, the judgment is affirmed.

PREWITT, P.J., and HOGAN, FLANIGAN and MAUS, JJ., concur.