STATE of Missouri, Respondent,

v.

Robert LOGGINS, Appellant.

Robert LOGGINS, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 54004, 55449.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 5, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1989.

Application to Transfer Denied
Nov. 14, 1989.

Robert J. Radice, St. Louis, for appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Presiding Judge.

In this jury-tried case, defendant Robert Loggins was convicted of first degree murder, first degree arson, and first degree robbery, in violation of §§ 565.020, 569.040, and 569.020, RSMo 1986. He was sentenced to consecutive terms of (1) life imprisonment without eligibility for probation or parole, (2) thirty years' imprisonment,[1] and (3) life imprisonment.

On appeal, defendant asserts that the court erred in (1) overruling his motions for acquittal, because there was insufficient evidence to support findings of guilt; (2) overruling his motion for mistrial, because the assistant circuit attorney employed her peremptory challenges in a racially discriminatory manner; (3) allowing the State to "death qualify" the jury; (4) admitting irrelevant evidence; (5) overruling defendant's motion for mistrial after testimony may have suggested that defendant had committed other crimes; (6) overruling defendant's post-conviction relief motion, because trial counsel was ineffective; and (7) sentencing defendant as a class X offender. Finding merit only in defendant's last claim, we affirm the conviction; but remand for resentencing.

## I

The evidence, viewed in a light most favorable to the verdict, discloses the following facts. At approximately 3:50 a.m. on August 12, 1986, a police officer on patrol noticed the smell of smoke. Upon investigating further, he discovered that the source of the smoke was a burning house, and notified the fire department.

After the fire was extinguished, firefighters found the body of a 70 year-old man on a bed. In preparing the body for transportation to the morgue, detectives noticed a "head wound" and blood on the bedsheets.

At the morgue, Dr. Michael Graham examined the body. At trial, he described the multiplicity of the victim's wounds. According to the doctor, the victim's head and facial injuries were consistent with having been (1) scratched by "something sharp or pointed"; (2) repeatedly struck "by some blunt object or a fist"; and (3) "struck ... with a bottle."

Investigators at the scene of the crime discovered the neck of a broken champagne bottle and a piece of green glass stained with blood. A large clump of hair was attached to the piece of glass. Microscopic comparisons "revealed that the hair on the glass was consistent with the victims hair."

In addition to these injuries, the victim suffered four gunshot wounds to his head. One wound was caused by a shot fired from a .25 caliber handgun into the top front portion of the victim's head; the bullet came to rest in the brain. The other three were "shotgun-type" wounds. These three wounds were caused by a gun fired from approximately twelve to eighteen inches from the victim's head.

After being repeatedly beaten and shot in the head, the victim's body and his house were doused with "medium petroleum distillates," such as "charcoal lighter." The victim's body and house were then intentionally set on fire, with fires being started in at least four separate locations. Although the gunshot wounds were serious and could have ultimately caused the victim's death, he actually died of smoke inhalation.

In examining the victim's home, friends and relatives reported numerous items were missing. The missing items included three televisions, two VCRs, stereo equipment, foreign and American coins, a microwave oven, and the victim's wallet containing "over a thousand dollars." Also missing from the garage were two Cadillacs; one was a beige convertible, the other was a white hardtop.

## II

The defendant, Ladon McCulley, and Terry Russell, were charged with murder, arson, and robbery. The three men were friends and "associates."

1. Defendant was charged as, and found to be, a persistent offender under § 558.016, RSMo 1986. As a result, the maximum term for first degree arson was increased to thirty years.

In August, 1986, McCulley was living "part time" with his girl friend Sharon Wright. Around midnight on the night of the murder, McCulley arrived at her apartment. He asked Sharon about some ski masks; they searched the apartment and found two masks. McCulley changed clothes, putting on a black t-shirt and dark corduroys. McCulley turned his t-shirt inside out to hide the Gucci emblem and make his shirt "just plain black." McCulley then left.

Around 6:30 that morning, McCulley returned to Sharon's apartment. He emptied his pockets of a large amount of change; then he hid two guns, a .25 and a .38, under a mattress. Russell was with McCulley. Russell had a brown plastic bag containing a new VCR and a telephone. These two items were put in Sharon's bedroom.

About a half an hour later, defendant arrived at Sharon's apartment. The three men sat in the living room. McCulley gave Sharon $250 in bills and told her to go pay the phone bill and rent.

Sharon left to pay the bills. Outside, she saw a "bunch of Police" looking at a car. A friend told her the car "came from somebody that got killed." Sharon then went back inside the apartment building "and hollered up the steps to [McCulley] to tell them the Police was out there" and the police were "looking at some car." McCulley then said, "they found the car, let's get the hell out of here" and all three men immediately left.

The car in front of Sharon's apartment was the victim's Cadillac convertible. During the preceding night, a 19 year-old boy saw defendant driving that car.

Later that same night, that boy and a friend saw the car parked on the apartment complex parking lot. As the two boys approached the car, they smelled PCP. The 19 year-old testified that defendant was in the car; defendant told the boys "to get the 'F' away from it." As he said that, defendant had a gun out the car window. When the police found the convertible in front of Sharon's apartment, it was in the same spot where the boys had seen it.

Four days later, a used car dealer sold a 1973 Buick to a Robert Loggins. The dealer's records indicated that Loggins lived at a certain address, later shown to be that of defendant. Three hundred dollars in cash was paid for the car.

On August 18, 1986, six days after the crimes, defendant drove the Buick to his wife's house. His wife's teenage sister went out to defendant's car. Defendant gave the teenager a tape recorder and told her to take it inside to his wife. The next day, the police seized the tape recorder from a room in the wife's house where defendant occasionally stayed. The tape recorder had been stolen from the victim.

About one week after the murder, McCulley was taken to the police station for questioning. Later that day, defendant phoned Sharon and "asked [her] what was going on." Sharon said that McCulley had been "taken down" for questioning. Defendant then asked, "[d]id he leave anything?" Sharon told defendant that McCulley had left a .38 gun. Defendant said he would come to get it.

Defendant arrived at Sharon's apartment with Russell and defendant's half-brother, and picked up the gun. Police later recovered the gun from defendant's half-brother. That .38 weapon was found to be one of the guns used to shoot the victim.

Some of the other property stolen from the victim was also recovered. A VCR was recovered at a woman's house where McCulley had taken it two days earlier. The foreign coins were recovered from Sharon's apartment. The white Cadillac was found in a school parking lot.

### III

In two points, defendant contends that the trial court erred in overruling his motions for acquittal; because there was insufficient evidence to support findings of guilt on the murder, arson, and robbery charges. Since these points are interrelated, they are considered together.

We first observe that defendant, McCulley, and Russell were jointly charged with these crimes. Defendant, however, was

tried separately. Nevertheless, in submitting these offenses to the jury, the court correctly patterned its instructions on MAI–CR 3d 304.04. The court's instructions correctly advised the jury of defendant's responsibility for his own conduct, as well as his responsibility for the conduct of others acting with him.

■ "In assessing a sufficiency of the evidence challenge, the evidence, together with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict and evidence and inferences contrary to the verdict are ignored." *State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc 1987). "We do not weigh the evidence but determine whether the evidence was sufficient for reasonable persons to have found defendant guilty as charged." *State v. White*, 736 S.W.2d 499, 500 (Mo.App.E.D.1987).

Although no eyewitness testified that McCulley, Russell, and defendant were in the victim's home, there was sufficient evidence to submit that issue to the jury. The victim's house was discovered on fire at 3:50 a.m. Less than three hours later, McCulley and Russell arrived at Sharon's apartment with two guns. One, a .38, fired the bullet recovered from the victim's neck.

Further, during the night of the crimes, defendant was twice seen in victim's beige convertible. When Sharon advised the three men that the police were out front looking at the car, all three immediately left. In addition, defendant gave victim's tape recorder to his wife, and was also involved in secreting the .38 weapon used in shooting the victim.

■ Defendant asserts that "the trial court committed error in overruling [defendant's] motions for judgment of acquittal as to the conviction of murder first degree, in that the evidence was insufficient to support a finding of guilt." More specifically, defendant complains that "[t]here was no evidence in this case, either direct or circumstantial, regarding [defendant's] mental state."

"A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020.1. For purposes of first degree murder, " 'deliberation' means cool reflection for any length of time no matter how brief." § 565.002(3), RSMo 1986.

In *State v. Antwine*, our Supreme Court said, "[d]irect evidence of deliberation is not necessary to support a [first degree murder] conviction; it is sufficient that deliberation is reasonably inferred from the circumstances surrounding the murder." *State v. Antwine*, 743 S.W.2d 51, 72 (Mo. banc 1987). Here, the uncontradicted medical evidence was sufficient to enable the jury to find that the victim was punched, scratched, clubbed with a bottle, shot four times, and finally set on fire. These factual circumstances, and the time necessary to accomplish them, would justify the jury in inferring that defendant and his associates had the opportunity to coolly reflect on the matter, "for any length of time no matter how brief." *See also State v. Mallett*, 732 S.W.2d 527, 533 (Mo. banc 1987).

As to the robbery and arson charges, defendant asserts the trial court "committed error in overruling [defendant's] motions for judgment of acquittal … in that the evidence was insufficient to support a finding of guilt." Defendant does not expand on this point in his argument.

■ We first address the sufficiency of the evidence supporting defendant's first degree robbery conviction. "A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime, … (2) Is armed with a deadly weapon…." § 569.020.

As stated earlier, the victim was shot with at least two different weapons. One, the .38, was brought to Sharon's apartment a few hours after the fire at the victim's house was discovered. A week later, defendant went to Sharon's apartment and picked up that gun. That gun was later recovered from defendant's half-brother. There was sufficient evidence for a jury to find that defendant or one of his associates was armed with a deadly weapon.

The evidence is overwhelming that defendant or his associates stole numerous items from the victim. Defendant was personally in possession of victim's beige convertible the night the crimes occurred. He also had personal possession of a tape recorder stolen from the victim's home.

In *State v. Williams*, 676 S.W.2d 845, 847 (Mo.App.E.D.1984), we said, "[e]vidence of robbery and unexplained possession of the stolen property support an inference of guilt." Strengthening this inference is defendant's flight after the police discovered the beige convertible. *Id.* There was sufficient evidence to support a finding of guilt of first degree robbery.

■ We next address the sufficiency of the evidence to support the arson conviction. "A person commits the crime of arson in the first degree when he knowingly damages a building or inhabitable structure, ... when any person is then present ... by starting a fire ... and thereby recklessly places such person in danger of death or serious physical injury." § 569.040.1.

As previously demonstrated, the evidence was sufficient to support an inference of defendant's participation in the murder and the robbery. That evidence also places defendant and his associates in the victim's house. Uncontradicted evidence established (1) the fire was intentionally set, (2) the victim was in the house when it was burned, and (3) the victim died of smoke inhalation. The evidence, therefore, was sufficient to support the first degree arson conviction. Points denied.

### IV

■ Defendant next argues that the trial court "committed error in overruling [defendant's] motion for mistrial prior to the twelve jurors and four alternates being sworn as the jury in this case, in that the [state] systematically struck nine black jurors on the basis of race."

The controlling case is *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[2] Here, defendant established that he is black, and the assistant circuit attorney used nine of her eleven peremptory challenges to remove blacks from the jury panel. Defendant did not, however, submit any other facts or relevant circumstances tending to prove that the assistant circuit attorney used her strikes to exclude persons from the jury on account of their race. By failing to submit evidence to satisfy the third *Batson* requirement ("other relevant circumstances"), defendant failed to establish a prima facie case of discrimination. *State v. Clark*, 756 S.W.2d 565, 572 (Mo.App.W.D. 1988). Nevertheless, the assistant circuit attorney offered reasons for exercising her peremptory challenges. Her explanations were race neutral and supported by the record. Further, the jury which tried the case included four blacks and one hispanic. Point denied.

### V

Defendant next contends that the trial court "committed reversible error in allowing [the State] to 'death qualify' the jury panel, in that this conduct precluded [defendant] from having his case heard before a jury made up of a fair cross section of the community." This challenge has been considered by both the United States and Missouri Supreme Courts and determined to be without merit. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *State v. Guinan*, 732 S.W.2d 174 (Mo. banc 1987). Point denied.

### VI

■ Next, defendant asserts that the trial court "committed reversible error in allowing into evidence testimony regarding the purchase of an automobile by [defendant] on August 16, 1986, in that there was no evidence linking the purchase to the crimes in question."

**2.** We note that this case was tried before the Missouri Supreme Court's decision in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987). Thus, the Missouri Supreme Court's expansion of *Batson* is inapplicable. *State v. Griffin*, 756 S.W.2d 475, 482 (Mo. banc 1988).

"On matters of relevancy ..., the trial court has broad discretion and its decision should be overturned only if it abused that discretion." *State v. Blair,* 638 S.W.2d 739, 757 (Mo. banc 1982). "Evidence is relevant if it logically tends to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principal issue." *State v. Berry,* 679 S.W.2d 868, 875 (Mo.App.E.D.1984).

Here, the State introduced evidence showing that defendant purchased a used car four days after the victim was robbed of "over a thousand dollars" cash. Defendant paid for the car with $300.00 cash. This evidence had a tendency to prove participation in the robbery and was, therefore, relevant. We find no abuse of discretion. Point denied.

## VII

■ Defendant next asserts that the trial court "committed error in denying [defendant's] motion for mistrial during the testimony of Detective Terry James, wherein he indicated he contacted probation and parole regarding [defendant], in that this improperly presented evidence of other crimes."

The unsolicited remark to which the point refers occurred as follows:

Q. [Assistant Circuit Attorney]: Now after you were then provided with information that provided you with the name of Robert Loggins, what additional investigation did you do then regarding him?

A. [Detective James]: We looked for him.

Q. Okay. And tell me about that?

A. Well, first I contacted—I contacted —let's see, I contacted someone from Probation and Parole and they were able to give me and [sic] address. We checked that address, he was not there.

Following this exchange, defense counsel moved for a mistrial; her request was denied. She then asked that it be stricken from the record and the jury instructed to disregard it. The judge granted that relief and told the jury to "disregard the last question and answer given by the witness."

"The declaration of a mistrial is a drastic remedy to be employed only in the most extraordinary of circumstances." *State v. Gilmore,* 681 S.W.2d 934, 943 (Mo. banc 1984). "[T]he mere mention of another offense is not per se prejudicial in the trial of a criminal case; it is within the discretion of the trial court to determine the extent of jury prejudice resulting from evidence of defendant's other crimes." *State v. Peters,* 732 S.W.2d 227, 231 (Mo.App.S.D.1987).

Here, the unsolicited statement made no direct mention of other crimes involving defendant. Instead, the statement merely permitted the jury to infer that defendant may have committed other crimes. This is not one of those "most extraordinary of circumstances" requiring the declaration of a mistrial. We find no abuse of discretion. Point denied.

## VIII

Defendant also makes three assertions of ineffective assistance of counsel. In *Strickland v. Washington,* the test for claims of ineffective assistance of counsel is whether "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. "[C]laims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. Our review is limited to determining whether the findings, judgment, and conclusions of the motion court are clearly erroneous. Rule 29.-15.

■ In the first of these points, defendant asserts that the court "committed error in overruling [defendant's] post-conviction relief motion, in that [defendant's] trial

attorney was ineffective by failing to call James Sanders, Arthur Brown and Carl Oliver as witnesses at trial."

We note preliminarily that "[a] decision not to call a witness to testify is a matter of trial strategy that is virtually unchallengeable." *Reese v. State*, 741 S.W.2d 97, 99 (Mo.App.E.D.1987).

In his "Amended Motion To Vacate, Set Aside, Or Correct Conviction And Sentence," defendant indicates that James Sanders would have testified "that some time" after 12:30 a.m. on the morning of the murder, "he heard the *dogs* barking outside of his house and he heard someone going up the back steps". Defendant asserts that this testimony, coupled with the State's theory that defendant and two accomplices participated in the murder, "would have created a reasonable doubt as to the guilt of defendant."

The "back steps" provided the rear access to the victim's house. They did not, however, provide the sole access to the victim's residence. Defense counsel said she did not call Sanders because she did not believe he had "anything to add to what was already being testified to."

The motion court found that "[t]he failure to call witness Sanders was not ineffective assistance of counsel and also a valid trial strategy. The fact that Mr. Sanders may have heard one person enter the victim's premises does not mean that more persons could not have also entered and gone up a stairwell." This finding is not clearly erroneous.

■ In his second claim under this point, defendant alleges that his counsel was ineffective for failure to call Arthur Brown as a witness. His underlying motion asserts:

Another witness that the defense counsel failed to call was a Mr. Arthur Brown, who worked with the victim. Mr. Brown would indicate that he left work with the victim at approximately 7:00 p.m. on the evening prior to the murder.... There was evidence in the case that the defendant was in possession of the victim's car at around 8:00 p.m. on the evening of, or prior to the murder in

question. Mr. Brown's testimony would have created a reasonable doubt in the juror's minds as to the guilt of defendant as to first-degree murder. The implication would be that quite possibly the defendant was involved somehow in the robbery of the vehicle, or in taking possession of the vehicle, however, would not have been at the scene of the crime at the time the murder took place.

Defense counsel testified that she did not call Brown because the only thing he would add was that the victim was last seen at 7:00 the evening before the murder. In response to this allegation, the trial court found that (1) "[t]he failure to call Mr. Brown ... would not have affected the verdict" and (2) "[i]t is not clear from the transcript the exact time in which the crime was committed." These findings are not clearly erroneous.

■ Defendant asserts in his last claim under this point that defense counsel was ineffective for failing to call Carl Oliver as a witness. The motion alleges that "Mr. Oliver would indicate that he saw the white Cadillac that was apparently stolen from the victim being driven onto a parking lot between 4:30 and 5:00 a.m. on the morning of the murder." The motion further alleges he would indicate he believed there were two people in the car.

Defense counsel testified that she did not call Oliver because there was no evidence linking defendant to the white hardtop Cadillac. She did not believe the evidence concerning the white Cadillac hurt her client.

The motion court found that defense counsel "did not feel the testimony of Carl Oliver was important, because it dealt with a Cadillac apparently occupied by persons other than her client. Failure to call this witness was a valid trial strategy and not therefore ineffective assistance of counsel." This finding is also not clearly erroneous. Point denied.

■ In his second point alleging ineffective assistance of counsel, defendant claims the trial court "committed error in overruling [defendant's] post conviction relief motion, in that [defendant's] trial attorney was ineffective, in that [defendant's]

trial attorney consented to the striking of juror no. 395 after eight days of trial and without conferring with [defendant]."

Defendant has presented no authority indicating that a public defender has a duty to confer with a defendant before excusing a sitting juror and replacing that juror with an alternate. *See generally* STANDARDS FOR CRIMINAL JUSTICE Standard 4-5.-2(b) and comment (1986). Beyond this, however, defendant has never alleged that he would not have acquiesced in his attorney's decision to replace juror no. 395 with an alternate. At the hearing on defendant's Rule 29.15 motion the following discussion occurred:

Q. Okay. If [defense counsel] would have consulted you during the trial regarding whether or not to let [juror no. 395] off the jury, would you have demanded that she stay on the jury?

A. If I knew what was said and things and told what the situation was, at some point I don't recall not at this time.

Q. But you weren't consulted?

A. No, I wasn't.

In addition, defendant has failed to demonstrate that he was prejudiced by the replacement of juror no. 395 with an alternate. Defense counsel, on the other hand, stated during the Rule 29.15 hearing:

I could not wait to get the alternate Juror Hangyal on the jury panel. I liked him very much. I liked his answers to the questions about the death penalty. I thought that it would be very difficult for him to give the death penalty if he were in that position. I felt much more comfortable with him being on the jury than I did with [juror no. 395] being on the jury. So I couldn't wait to be able to put him on the jury and that was another reason why I did not object.

The motion court found defense counsel's action was "a valid trial strategy." Further, the motion court found such a "decision is one for the attorney and not that of the client." The motion court's finding is not clearly erroneous. Point denied.

 In his final point alleging ineffective assistance of counsel, defendant asserts that the court "erred in overruling [defendant's] post-conviction relief motion, in that [defendant's] trial attorney was ineffective by refusing to allow [defendant] to testify on his own behalf at the trial."

Defendant stated that he wanted to testify, but his counsel prevented him from doing so. Defense counsel, on the other hand, stated that defendant indicated to her that he would be willing to testify. However, due to defendant's "prior record and his robbery convictions", she advised him not to testify.

In its findings, the motion court stated that it "totally and completely" disbelieved defendant's testimony. Rather, the motion court found "that [defendant] accepted [trial counsel's] advice and voluntarily decided not to testify." The trial court was entitled to believe the testimony of defense counsel while disbelieving defendant's testimony. *Lahay v. State*, 752 S.W.2d 65, 66 (Mo.App. E.D.1988). The motion court's finding is not clearly erroneous. Point denied.

IX

 In his last point, defendant asserts that the trial court erred in sentencing him as a class X offender pursuant to § 558.019, RSMo 1986. We agree. Section 558.019 became effective January 1, 1987. The crimes for which defendant was convicted occurred on August 11 or 12, 1986. Thus, § 558.019 is an ex post facto law as applied to defendant in this case. *State v. Lawhorn*, 762 S.W.2d 820, 826 (Mo. banc 1988); *State v. Hillis*, 748 S.W.2d 694, 697–98 (Mo.App.E.D.1988). We, therefore, remand to the trial court for resentencing.

Conclusion

Defendant's convictions are affirmed. Since the provisions of § 558.019 were not applicable to defendant, we remand for the sole purpose of resentencing.

Defendant attacked his convictions with a Rule 29.15 motion. Pursuant to Rule 29.15(d), defendant was required to state every ground known to him for vacating, setting aside, or correcting the judgment or sentence. Thus, defendant has submitted

all possible claims for relief which could be raised concerning his trial and the original sentence. Those requests for Rule 29.15 relief relating to the trial and matters occurring before sentencing have all been denied.

It is possible that following the resentencing of defendant, defendant could claim that his new sentence violates the United States or Missouri constitutions, or a law of this state. To that extent only, there is no prohibition against defendant appealing his new sentence, or filing a Rule 29.15 motion limited to alleged violations occurring during resentencing.

The judgment, therefore, is affirmed; but the cause is remanded to the trial court for resentencing.

GARY M. GAERTNER and KAROHL, JJ., concur.