STATE of Missouri, Respondent,

v.

Robert DRISCOLL, a/k/a Albert Eugene Johnson, Appellant.

No. 66852.

Supreme Court of Missouri,
En Banc.

June 17, 1986.

Rehearing Denied July 15, 1986.

C.J. Larkin, Office of the State Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Robert Driscoll[1] was convicted by a jury of capital murder, § 565.001, RSMo 1978 (repealed effective October 1, 1984), for the stabbing death of Thomas Jackson, a correctional officer assigned to the Missouri Training Center for Men in Moberly, Missouri. We have exclusive appellate jurisdiction of this criminal case because defendant has been sentenced to death. *See* Mo.Const. art. V, § 3.

In fixing death as the appropriate punishment, the jury found as a basis for the imposition of capital punishment the following statutory aggravating circumstances: (1) defendant had a substantial history of

---

1. Defendant's true and legal name is Albert Eugene Johnson, however, evidence at trial revealed that defendant assumed the alias, Robert Driscoll, after he robbed a person of that name in 1982 in California. Defendant stole the robbery victim's identification material.

prior assaultive criminal convictions [§ 565.012.2(1)] (repealed effective October 1, 1984); (2) the victim was a corrections employee engaged in the performance of his official duty [§ 565.012.2(8)]; and, (3) the defendant was in the lawful custody of a place of confinement [§ 565.012.2(9)]. In connection with defendant's criminal history, the State introduced evidence documenting that defendant had seven prior felony convictions and an established reputation for violence.

Along with defendant Driscoll, two other Moberly inmates, Rodney Carr and Roy Roberts, were charged and separately convicted of capital murder in connection with the stabbing death of Officer Jackson. This Court recently affirmed the capital murder conviction of Roy Roberts for his role in the murder of Officer Jackson. *See State v. Roberts*, 709 S.W.2d 857 (Mo. banc 1986). The fundamental facts and circumstances surrounding the murder of Officer Jackson are set forth in detail in *Roberts*. We direct the reader to *Roberts* for a complete explication of the factual history of Officer Jackson's death. The additional facts we set forth are those which are uniquely relevant to the circumstances of defendant's role in the murder of Officer Jackson—which occurred during a brief melee involving prisoners and correctional officers in the B Wing at the Moberly facility on July 3, 1983.

After Officer Jackson had been physically overcome and pinned against a partition by Roy Roberts, a 300 pound inmate, defendant, using a homemade knife that he had already assembled and had concealed in the back of his pants, thrust the instrument of death three times into Officer Jackson's chest. Two of defendant's fatal thrusts penetrated the victim's heart and lungs. As defendant, Roberts, and Carr were murdering Officer Jackson, the victim's co-workers desperately tried to bring Officer Jackson to safety, but other inmates stalled the rescuing guards' efforts. In the course of the efforts of fellow guards to rescue Officer Jackson, defendant managed to stab Officer Harold Maupin in the shoulder.

While the disturbance continued and additional guards sought to restrain the prisoners and restore order, defendant returned to his cell and changed his clothes, which by that time had become stained with the blood of his victims.[2] As order was being reestablished and inmates began to flee to their cells, defendant told his cell mate, Jimmy Jenkins, "I killed the freak." And he also sought further recognition for his actions from another inmate, Joe Vogelpohl, by inquiring of Vogelpohl, "[d]id I take him out JoJo or did I take him out?" Furthermore, the following day defendant made an inculpatory statement to Highway Patrol and prison investigators. The wounds that were inflicted upon the victim by defendant were determined to have caused Officer Jackson's death.

At the outset, we initially note defendant does not question the sufficiency of the evidence to sustain his conviction.

Defendant's first two assignments of trial error concern allegedly improper and prejudicial statements made by the prosecutor to the jury throughout the trial. First, defendant contends that the prosecutor improperly conveyed to the jury the notion that it is the trial judge and not the jury who bears the ultimate responsibility for the final imposition of sentence.[3] Sec-

---

**2.** Defendant's pants were found to contain blood that matched the blood type of Officer Jackson.

**3.** The following excerpted commentary by the prosecutor is illustrative of the statements which defendant maintains lessened the gravity of the jury's responsibility to impose sentence upon defendant.

But when you've returned a verdict of—say a recommendation of death, you each one have an individual vote. But also, the Judge has a vote. Do you understand that? In other words, it takes thirteen.

So what you as a jury do is on the punishment stage, you go back and you agree as a group—and assume for a moment that you made a recommendation of death. Now, what that means is that the judge can now consider a sentence of death as one of the two

ond, defendant maintains that certain remarks by the prosecutor served to dilute defendant's right to be presumed innocent and actually caused the burden of proof to shift to the defendant.[4]

■ Before proceeding to an examination of defendant's first two points it should be observed that defendant seeks review of them under the plain error doctrine because of his failure to object or preserve the points in his motion for new trial. Under this standard of review, the plain error complained of must impact so substantially upon the rights of the defendant that manifest injustice or a miscarriage of justice will result if left uncorrected. *See State v. Miller,* 604 S.W.2d 702 (Mo. App.1980).

■ We turn now to defendant's first contention which focuses on the trial court's failure to sua sponte admonish the prosecutor for making statements to the jury throughout the trial which suggested that the judge and not the jury was responsible for the final imposition of sentence.

In *State v. Roberts, supra,* we were confronted with a similar assignment of error involving prosecutorial comments that were made during the punishment phase of the trial. The defendant in *Roberts* argued that it was plain error for the trial court not to have declared a mistrial or admonish the jury when the prosecutor informed the jury that their verdict would serve only as a recommendation to the trial judge.

In rejecting this argument we began by pointing out that in Missouri, Rule 29.05 vests in the trial court the "power to reduce ... punishment ... for the offense if [the court] finds the punishment excessive." Consequently, we concluded that the prosecutor's statement that the trial judge could reduce the sentence was a correct statement of law. *Roberts,* at 869. Additionally, we noted that the defendant in *Roberts* had failed to enter an objection when the prosecutorial comments were made. *Roberts,* at 869. Furthermore, we found that *Caldwell v. Mississippi,* —— U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), under the facts of *Roberts,* did not compel a finding of plain error because *Caldwell* involved a clearly inaccurate statement of law—which was not the case in *Roberts.* In this same respect, *Caldwell* is distinguishable from the facts of the present case.

Here, defendant does not contend that the prosecutor made an incorrect statement of law but only that his remarks undermined the gravity of the jury's decision. As noted, *supra,* the defendant failed to object to the prosecutorial comments which he now assigns prejudice. Next, the transcript reveals that defendant himself, reiterated the prosecutor's comments to the panel during voir dire—in an apparent attempt to impress upon them that it was the jury, rather than the trial judge, who carries the primary responsibility for imposing sentence. This was done by defendant on two separate occasions.

Contrary to defendant's contentions the record in this case fails to reveal plain

---

possible sentencing alternatives. Do you understand that?

What I'm saying is that the final decision is up to the Judge.

These statements were made during voir dire; however, defendant has also targeted similar statements made during the prosecution's opening statements in the penalty phase of the trial.

4. The statements of the prosecutor that defendant contends undermined the presumption of innocence and shifted the burden of proof took the following form during an exchange between the prosecutor and a venireperson during voir dire.

[Prosecutor]: Now, the reason why I'm asking you this, Mr. Christopher, is that the innocent people—the people of the State of Missouri are entitled to a fair trial here too. It's not only the Defendant that's entitled to a fair trial—the people are entitled to a fair trial too. Do you understand that?

VENIREMAN CHRISTOPHER: Now, what are you talking about—people?

[Prosecutor]: Well, I'm talking about the innocent people—the people—the taxpayers and the people who have a right to be safe in their home. Do you understand? [Emphasis added.]

Defendant has also challenged similar remarks made during the State's closing argument in the guilt phase of the trial.

error of any degree which if left uncorrected would result in either manifest injustice or a miscarriage of justice. As we have already noted, defendant in the first instance failed to offer an objection of any kind. Second, defendant, for what appears to be tactical reasons, voluntarily repeated to the jury panel the very prosecutorial comments he now maintains are improper and prejudicial. *See e.g., State v. Foster*, 700 S.W.2d 440, 443 (Mo. banc 1985). Third, the transcript demonstrates that throughout voir dire, defendant, as well as the State, attempted to convey to the veniremen and venirewomen the seriousness of the responsibility thrust upon a jury in a capital murder case. Finally, our conclusion that the trial court's failure to sua sponte admonish the prosecutor does not constitute plain error is not altered by defendant's invocation of the teachings of *Caldwell.*

■ Defendant next contends that the prosecutor's repeated references to the "innocent people of Missouri", which were made during voir dire and closing arguments of the guilt phase of the trial, served to ridicule and undermine the operation of the presumption of innocence and shifted the burden of proof—thereby denying defendant a fair trial. Specifically, defendant assigns plain error to the trial court's failure to admonish the prosecutor and instruct the jury each time the prosecutor made these references.

Initially, it should be pointed out that of the times the prosecutor engaged in this line of argument defendant made but only a single objection—which the trial court acted upon by cautioning the prosecutor. However, we find it curious why defendant failed to object again for the remainder of the trial. If defendant's failure to act was rooted in trial strategy he should not now be heard to complain about the consequences of his own inactions. Furthermore, we find it difficult to dismiss entirely the possibility that the trial judge might have assigned strategic reasons to defendant's prolonged silence in this matter. In this connection, it must be noted that defendant's silence carried over into his motion for a new trial, which did not denominate as error of any kind the trial judge's failure to sua sponte admonish the prosecutor for engaging in this line of commentary.

Equally important in our review of this issue is the fact that throughout the course of the trial, both advocates repeatedly and forcefully impressed upon the jury the concept that in a criminal case there existed a presumption of innocence and that it was very much in operation in the present case and that the State did have the burden of proving defendant's guilt beyond a reasonable doubt.

After having carefully reviewed the transcript and after examining defendant's arguments, we conclude the trial court's failure to sua sponte admonish the prosecutor and instruct the jury panel did not constitute plain error.

On the day defendant's trial was scheduled to commence, defendant was subjected to an x-ray for security purposes connected with transporting him to trial and securing his presence at trial. The x-ray revealed a homemade handcuff key in his stomach and a knife wrapped in gauze concealed in his rectum. At trial the State introduced these items into evidence and defendant objected on the basis they were irrelevant and unduly prejudicial. The trial court overruled defendant's objection and admitted the items into evidence.

■ Initially, it should be observed that with respect to the question of relevancy, "the trial court has broad discretion and its decision should be overturned only if it abused that discretion." *State v. Blair*, 638 S.W.2d 739, 757 (Mo. banc 1982), *cert. denied Blair v. Missouri*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1982) *reh'g. denied*, 459 U.S. 1229, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). Additionally, it should be noted that "evidence is relevant if it logically tends to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principal issue." *State v. Berry*, 679 S.W.2d 868, 875 (Mo.App.1984).

■ In the present case the handcuff key and knife were evidentiary items that helped establish a plan to escape, which in turn was relevant in showing a consciousness of guilt. Defendant, however, was free to—and in fact did—attempt to discredit the effect of this evidence in argument to the jury. We find no abuse of discretion and no reversible error.

Next, defendant argues that an inculpatory statement he gave to investigating officers the day after Officer Jackson's murder should have been suppressed because the statement was a product of physical and psychological coercion. The trial court denied defendant's motion to suppress admission of this statement. The transcript reveals substantial evidence from which the trial court could have concluded that defendant's inculpatory statement was given and received within the bounds of our state and federal Constitutions.

■ Defendant's next contention focuses on the trial court's excusing for cause four venirepersons who testified that they would be unable to consider a sentence of death under any circumstances. This issue was recently decided by the United States Supreme Court in *Lockhart v. McCree,* — U.S. —, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) and under *Lockhart,* defendant's claim of constitutional deprivation is without merit. *See State v. Zeitvogel,* 707 S.W.2d 365 (Mo. banc 1986).

Defendant also challenges the constitutionality of the death penalty—under both the Missouri and United States Constitutions. This Court has repeatedly rejected constitutional challenges to Missouri's death penalty provisions. *See e.g. State v. Gilmore,* 681 S.W.2d 934, 946 (Mo. banc 1984); *State v. Byrd,* 676 S.W.2d 494, 506–07 (Mo. banc 1984) *cert. denied, Byrd v. Missouri,* — U.S. —, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982) *cert. denied,* 495 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149, *reh'g. denied,* 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982). The point is denied.

■ Finally, we are required by statute, § 565.014, RSMo 1978 (repealed effective October 1, 1984; current statute, § 565.-035, RSMo Cum.Supp.1984), to conduct an independent review of all death sentences. Defendant does not argue that his sentence was a result of "passion, prejudice, or any other arbitrary factor", and the entire legal record and transcript support without reservation the conclusion that defendant's sentence was not a result of any one of these three circumstances. Section 565.-014.3(1). Furthermore, the three statutory aggravating circumstances which were found by the jury are amply supported by the evidence presented at trial.

The last component of our independent review requires us to consider whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Section 565.014.3(3). In conducting our review, we examined the following cases. *See e.g., State v. Roberts,* supra; *State v. Bolder,* 635 S.W.2d 673 (Mo. banc 1982); *State v. Shaw,* 636 S.W.2d 667 (Mo. banc 1982), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1983); *State v. Trimble,* 638 S.W.2d 726 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Guinan,* 665 S.W.2d 325 (Mo. banc 1984), *cert. denied,* — U.S. —, 105 S.Ct. 227, 83 L.Ed.2d 227 (1984); *State v. Zeitvogel, supra.*

In this case the victim was repeatedly stabbed by defendant, while unarmed and physically incapacitated. The evidence is virtually undisputed as to defendant's guilt and the offensive nature of the sixty-two year old guard's death. Defendant had a substantial history of criminal conduct that was not deterred by incarceration. As we observed in *State v. Roberts, supra,* there must be a real cost attached to taking the life of an unarmed prison guard. Absent such a cost, order and stability will forever remain an illusive goal in our penal system.

We conclude that the penalty imposed is neither excessive nor disproportionate to the penalties imposed in similar cases, con-

sidering the facts and circumstances of the crime and the defendant.

We have examined defendant's remaining points and find them to be without merit.

Judgment affirmed.

HIGGINS, C.J., DONNELLY and RENDLEN, JJ., and GAERTNER, Special Judge, concur.

BLACKMAR, J., concurs in result in separate opinion.

WELLIVER, J., concurs in result in separate concurring in result opinion of BLACKMAR, J.

ROBERTSON, J., not sitting.

BLACKMAR, Judge, concurring in result.

I deplore the prosecutor's attempt to downplay the importance of the jury's function in death sentence cases, for the reasons set forth in my concurring opinion in *State v. Roberts*, 709 S.W.2d 857 (Mo. banc 1986). I do not accept the principal opinion's attempt to distinguish *Caldwell* by the suggestion that the statements in the present record are not "clearly inaccurate." It is inaccurate to refer to the jury's verdict of death as a "recommendation," or to refer to the trial judge as a "thirteenth juror." I concur in the result, however, because of the gravity of the offense, the absence of objection, and statements by defense counsel indicating absence of disagreement with the prosecutor's legal proposition.

The principal opinion does not repeat the admonition of *Roberts* that prosecutors not use this kind of argument in the future, but I assume that the Court's position on the matter is unchanged. I am also gratified by the Attorney General's assurance that there will be no repetition in cases where that office is responsible for the trial. We should not tolerate future attempts to minimize the gravity and importance of the jury's duty in capital cases.