**Robert DRISCOLL, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 70717.**

Supreme Court of Missouri,
En Banc.

Jan. 17, 1989.

As Modified on Denial of Rehearing
March 14, 1989.

Robert Craig Wolfrum, Asst. Public Defender, St. Charles, for appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Special Judge.

Robert Driscoll was charged and convicted of capital murder and sentenced to death. The conviction was affirmed on direct appeal. *State v. Driscoll*, 711 S.W.2d 512 (Mo. banc 1986), *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). This is an appeal of his Rule 27.26 motion for post-conviction relief from that conviction and sentence. The hearing court denied relief. We affirm.

Driscoll was convicted of the capital murder of Tom Jackson, a correctional officer at Missouri Training Center for Men. Officer Jackson was stabbed during a riot at that facility.

Driscoll contends that he received ineffective assistance of counsel in his criminal trial and its appeal. He asserts nine grounds whereby he claims the hearing court erred in holding that his trial counsel provided the effective assistance guaranteed by the Sixth and Fourteenth Amendments.[1] Driscoll further asserts that he was denied his right to due process of law in violation of the Fourteenth Amendment because the trial court failed to control

---

1. All Amendments referenced herein are Amendments to the U.S. Constitution.

certain arguments made by the prosecutor at the criminal trial.

Our review of the actions of the hearing court is limited to a determination of whether that court's findings, conclusions and judgment are clearly erroneous. Rule 27.26(j); *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987); *Futrell v. State,* 667 S.W.2d 404, 405 (Mo. banc 1984).

In reviewing the determinations of the hearing court with respect to Driscoll's claims of ineffective assistance of counsel, the focus is on (1) counsel's performance, and, (2) if that performance is deficient, whether prejudice resulted from counsel's breach of duty. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1983); *Sanders v. State, Id.* at 857–58.

■ Counsel's performance is assessed by determining if counsel acted "reasonably within prevailing professional norms under all circumstances." See *Sanders* at 858. *"Reasonably* effective assistance may be defined as 'the skill and diligence that a *reasonably* competent attorney would exercise under similar circumstances.'" *Sanders* at 858, quoting *Thomas v. Lockhart,* 738 F.2d 304, 307 (8th Cir.1984), quoted in *Kellogg v. Scurr,* 741 F.2d 1099, 1100 (8th Cir.1984). (Emphasis in *Sanders.*)

Appellant bears the burden of proving his grounds for relief by a preponderance of evidence. Rule 27.26(f). That burden, with respect to an allegation of ineffective assistance of counsel, has been characterized as being "heavy" to bear. *Stevens v. State,* 560 S.W.2d 599 (Mo.App.1978); *Pickens v. State,* 549 S.W.2d 910 (Mo.App.1977); *Lahmann v. State,* 509 S.W.2d 791 (Mo. App.1974).

It is within these parameters that the contentions by this appellant are considered.

■ Driscoll's first assertion of ineffective assistance of counsel relates to testimony by one of the state's witnesses, forensic serologist, Dr. Kwei Lee Su.

Trial testimony was that Driscoll had used a knife to stab Officer Jackson.[2] The knife recovered from Driscoll was in evidence. It had been analyzed for blood residue by Dr. Su.

Testimony at trial was that Driscoll had stabbed Jackson several times in the chest, and, subsequently, had stabbed another corrections officer, Harold Maupin, in the shoulder.

Jackson had type O blood. Maupin had type A blood.

Kwei Lee Su testified at trial that the knife recovered from Driscoll had type A blood on it, but did not have any traces of type O blood at the time it was analyzed at the Missouri State Highway Patrol laboratory. In response to questions by the prosecutor, Su testified that she had performed an antigen test which disclosed type A blood on the knife. She was asked what results would occur from the antigen test if both types A and O blood were present. Dr. Su explained that the type A blood would be revealed but the type O blood would not be revealed.[3]

No inquiry was made by either the prosecutor or defense counsel as to whether other tests were performed which would have shown the presence of type O blood even though type A blood was present.

The state, in its closing argument, argued that the fact that the analysis of the blood on Driscoll's knife did not show any type O blood present was meaningless because there was type A blood present and, by the antigent test, if types A and O are mixed, only type A is revealed.

At the evidentiary hearing on appellant's 27.26 motion, Dr. Su testified that two tests

---

2. For a more complete recital of the facts in the criminal case, see *State v. Driscoll,* 711 S.W.2d at 514, and *State v. Roberts,* 709 S.W.2d 857 (Mo. banc 1986). *Roberts* evolves from another inmate's participation in the stabbing death of Officer Jackson.

3. The following question and answer were asked and given:
    Q. So the presence in the mixture of A and O—the presence of A, because of the reaction that you used, masks the presence of O, doesn't it?
    A. With this method, yes.

were performed on the knife recovered from Driscoll. The first test, the Thread method, was for antigen determination. The second, the Lattes method, was for antibody determination.

Dr. Su testified that the masking effect which precludes discovery of the presence of type O blood when type A blood is present applies to the antigen test, or Thread method, not to the Lattes test. She testified that her report did not distinguish between the two tests performed. The report did indicate that type A blood was present on the knife.

Driscoll's trial counsel was called as a witness at the evidentiary hearing on the 27.26 motion. His testimony was that the information he had at trial was that blood on the knife used by Driscoll was not the same blood type as that of Officer Jackson and, at the time of trial, he was not aware of the existence of scientific evidence that would have rebutted the "masking argument" made by counsel for the state.

Appellant asserts that his representation at trial was deficient in that his trial counsel failed to develop scientific evidence to show that Officer Jackson's blood was not on the knife. He claims that he was prejudiced for the reason that, had the presence of Officer Jackson's blood on the knife in evidence been precluded, the result of Driscoll's trial would likely have been different.

The hearing court found that although Driscoll's trial counsel did not cross-examine Kwei Lee Su regarding the antibody test performed on the knife, the cross-examination did make known to the jury the fact that the antigen test did not disclose Officer Jackson's blood on the knife.

The hearing court further found that there was no evidence that the state withheld the results of any tests performed on the knife. The conclusion reached by the hearing court was that Driscoll was not prejudiced by trial counsel's failure to present evidence regarding the antibody test and, "in view of all of the evidence presented at trial it is unlikely that testimony regarding the antibody test would have affected the outcome of the trial."

Other evidence at trial included two eyewitnesses who testified that they saw Driscoll stab Officer Jackson; evidence that Officer Jackson's blood was found on clothing which Driscoll discarded in his cell after the stabbing; and, incriminating statements by Driscoll.

The hearing court's findings and conclusions with respect to trial counsel's cross-examination of Dr. Su were not clearly erroneous.

■ Driscoll next asserts that his trial counsel was ineffective for not challenging Juror Helen Harris for cause.

Prospective jurors were advised that there would be evidence of drinking and intoxication at the time when Officer Jackson was killed.

During *voir dire*, Juror Harris expressed doubts about whether she could give fair consideration to issues involving drunkenness. Mrs. Harris advised the court that her daughter was killed as a result of an automobile accident in which she was struck by an automobile that was operated by a drunk driver.

Following a series of questions and answers in which Juror Harris expressed the grief she had experienced as a result of her daughter's death and stated that she was unsure about whether she "could give a fair trial to an individual where drunkenness might be alleged," the following questions and answers were exchanged between the prosecuting attorney and Mrs. Harris:

MR. FINNICAL [prosecutor]: Remember when we were all talking about how we compartmentalize our mind? Can you put the experience that you had with alcohol and the death of your loved one—can you put that in that little compartment and decide this case only on the facts that you hear and the law in the instructions that the Judge gives you?

VENIREPERSON HARRIS: I think what the Judge gives me—I believe I can be honest with you. I'll tell you my honest feelings.

MR. FINNICAL: Okay. Do you think you can put that deep experience that you had over in the corner of your mind?

VENIREPERSON HARRIS: But, you see, I'm awful bitter for it.

MR. FINNICAL: I understand. My question is—we just kind of need whether you think you can do it or not?

VENIREPERSON HARRIS: I probably can.

MR. FINNICAL: Thank you.

Trial counsel made no challenge for cause as to Mrs. Harris. She was selected as a juror in the criminal case.

At the evidentiary hearing on appellant's 27.26 motion, Driscoll's trial counsel testified that he believed Mrs. Harris had been rehabilitated by her responses to the questions asked by Mr. Finnical. He further testified that he had intended to present evidence that there were guards who were responsible for bringing liquor into the prison and that this had been an element in the riot which occasioned Officer Jackson's death. Driscoll's trial counsel expressed the further opinion that he believed having someone on the jury who was opposed to alcohol might work to his client's advantage. He stated that the decision to leave Mrs. Harris on the jury was, in part, trial strategy.

The hearing court found that:

[T]rial counsel made a deliberate decision to leave Juror Helen Harris on the jury panel, despite her views on consumption of alcohol, due to the anticipated evidence that a certain guard or guards may have brought alcohol into the prison, and counsel believed such evidence would be viewed by Juror Harris as favorable to the defendant;....

■ We do not find the hearing court's finding to be clearly erroneous. Trial strategy is not a basis for attack on the issue of competency of counsel. *Brown v. State*, 495 S.W.2d 690, 694 (Mo.App.1973). As noted in *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065:

It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

[Citations omitted.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

We do not find that the hearing court erred in concluding that the failure to challenge Juror Harris for cause was not deficient performance by Driscoll's trial counsel. The conscious decision which the trial counsel reached was reasonable within prevailing professional norms under the circumstances of the case.

Driscoll next claims that he was denied effective assistance of counsel for the reason that his trial counsel failed to object to certain statements by the prosecutor about the "capital sentencing process." He asserts that the prosecutor, during *voir dire*, in his opening statement and in his closing argument, made incorrect statements about the law. He then, alternatively, asserts that even if those statements were correct, they lessened the jury's sense of responsibility for making a decision to impose the death penalty. Driscoll asserts that had the statements about which he complains not been made, there exists a reasonable probability that the death penalty would not have been assessed by the jury.

■ The statements about which appellant complains referred to the relative roles of the trial judge and the jury in the imposition of the death penalty. The prosecutor made statements and arguments that the jury's imposition of the death penalty, as the punishment in this case, was a recommendation to the judge which would permit the judge to consider the death penalty as one of two sentencing alternatives. The prosecutor suggested to the jurors that they each had an individual vote, but, that the Judge also had a vote. He advised the jury that, in order for Driscoll to receive the death penalty, "It takes thirteen." The prosecutor summed up these statements

as, "What I'm saying is that the final decision is up to the Judge."[4]

The hearing court found that the statements and arguments made by the prosecutor in this regard were not violative of Driscoll's right to due process and that Driscoll's trial counsel's failure to object did not constitute ineffective assistance of counsel. The hearing court concluded that the statements and argument made by the prosecutor did not constitute conduct of the type prohibited by *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The hearing court further found that Driscoll's direct appeal of his underlying criminal case addressed and determined these issues. Appellant asserts that those findings and conclusions by the hearing court were in error.

The hearing court's findings and conclusions as to this issue are not clearly erroneous.

The substance of the actions which Driscoll asserts as deficient conduct by his trial attorney was reviewed on direct appeal of the criminal case on a claim that the prosecutor's statements constituted "plain error." In *State v. Driscoll*, this Court held that a statement by the prosecutor informing the jury that their verdict, in a death penalty case, served only as a recommendation to the trial judge constituted a correct statement of the law, pursuant to Rule 29.05, which gives a trial court "power to reduce . . . punishment." *State v. Driscoll, Id.* at 515, citing *State v. Roberts*, 709 S.W.2d 857 (Mo. banc 1986).

Appellant urges this Court to now hold otherwise. We decline to do so.[5]

In *State v. Driscoll*, 711 S.W.2d at 515, the Court held *Caldwell*, to be distinguishable from the facts in *Driscoll* in that the statements of the prosecutor were not clearly inaccurate statements of law.

The points which Driscoll now raises with respect to the prosecutor's statements and arguments that a jury's verdict assessing the death penalty is a "recommendation" to the Judge and that the Judge has a "thirteenth vote" were raised and determined adversely to Driscoll in the direct appeal from his criminal conviction. The holding in *Driscoll* that Driscoll's contentions failed "to reveal plain error of any degree which if left uncorrected would result in either manifest injustice or a miscarriage of justice" is determinative. Even if trial counsel's performance was said to have been deficient in not objecting to the remarks about which Driscoll now complains, the holding in Driscoll's direct appeal suffices as a determination that such conduct did not deprive Driscoll of a fair trial, "a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064. Appellant is not entitled to relitigate this issue since it was decided in his direct appeal. A post-conviction proceeding is not a "substitute for a second appeal." Rule 27.26(b)(3); *Richards v. State*, 495 S.W.2d 442, 443 (Mo.1973).

Driscoll next complains that he was denied effective assistance of counsel because his trial counsel failed to request an instruction on second degree felony murder. The hearing court held that the failure to request such an instruction did not constitute ineffective assistance of counsel. Driscoll contends that the hearing court erred by so holding.

The murder of Officer Jackson occurred in July, 1983. Driscoll was convicted of the offense of capital murder in accordance with § 565.011, RSMo 1978 (repealed effective October 1, 1984). Second degree murder, as prescribed by § 565.004, RSMo 1978, was a lesser included offense of capital murder. *State v. Clark*, 652 S.W.2d 123, 127 (Mo. banc 1983), citing *State v. Hills*, 645 S.W.2d 57 (Mo.App.1982).

---

4. Excerpted commentary by the prosecutor which is illustrative of the statements about which appellant complains may be found in footnote 3 of *State v. Driscoll*, 711 S.W.2d at 514–15.

5. It is appropriate to note that *Roberts* admonished prosecutors not to use the type of argument of which Driscoll now complains in the future. The suggestion was made in the concurring opinion of Blackmar, J., in *Driscoll*, ". . . that the Court's position on the matter is unchanged." *State v. Driscoll*, 711 S.W.2d at 518.

Second degree murder, as that offense existed under *§ 565.004, RSMo 1978*, could be proved by two methods: (1) as conventional second degree murder, or, (2) as second degree felony murder (the showing that the killing occurred while an accused was committing or attempting to commit a felony other than one of the felony offenses designated in *§ 565.003, RSMo 1978*, the first degree felony murder statute then in effect). See *Clark* at pages 127–28 for a discussion of the second degree murder statute in effect at the time of the offense for which Driscoll stands convicted.

The jury in Driscoll's underlying criminal case was given an instruction on second degree murder as a lesser included offense of capital murder. That instruction was in the form of conventional second degree murder. The evidence strongly supported the submission of second degree murder by that method. An instruction on second degree murder by the felony murder method was not required.

The hearing court's determination that Driscoll's trial counsel was not ineffective for failing to request an instruction on "second degree felony murder" is not clearly erroneous.

Driscoll also asserts that he had ineffective assistance of counsel for the reason that his trial counsel failed to object to certain testimony and closing arguments by the prosecutor. He claims that the trial court failed to afford him due process of law because it permitted the prosecutor to make personal references and statements during the course of the trial.

The hearing court held that the trial record did not support Driscoll's claim in this regard. Appellant asserts that finding to be in error.

Appellant contends that, at trial, the prosecutor repeatedly placed "incompetent and inadmissible evidence, arguments, in-

ferences, and his own unsworn testimony before the jury." He asserts that trial counsel failed to object and, thereby, denied him effective assistance of counsel.

In his brief, appellant sets out three series of questions by the prosecutor and responses of witnesses to those questions; one narration by the prosecutor offered as an objection; and, two statements made by the prosecutor during closing argument consisting of two or three sentences each. The quotations contain personal references.[6]

We do not find the hearing court's determination of this point to be clearly erroneous.

■ Trial strategy is an element in an attorney's decision to pose an objection to a particular question or statement. Considering the trial record as a whole we do not find that trial counsel was deficient in not posing objections to those questions and other statements about which appellant now complains. Neither do we find that if the questions and other statements had been stricken from the record, that a reasonable probability exists that the result in Driscoll's trial would have been different. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064.

■ The second part of this complaint by appellant asserts that the hearing court erred in finding that the trial court did not deny Driscoll due process of law as guaranteed by the Fourteenth Amendment by "its failure to control the prosecutor."

This point was not raised on direct appeal although it alleges trial error. Appellant has failed to show a basis for his allegation that the conduct of the prosecutor resulted in a denial to him of any fundamental fairness afforded by his constitutional guarantee of due process of law. He has not shown the existence of rare and exceptional circumstances which would entitle this issue to receive further consideration.

---

**6.** *E.g.*, the first series of exchanges which appellant sets out in his brief is:
    Q. Now, I believe you indicated that the prosecutor of this case threatened to prosecute Eddie Rugg—is that your testimony?
    A. Yes.

    Q. Well, I'm the Prosecutor. Would it surprise you to learn that such an event never took place?
The other exchanges and statements were in similar format and contained similar personal points of reference.

*Dixon v. State,* 624 S.W.2d 860, 862–63 (Mo.App.1981); Rule 27.26(b)(3). The point is denied.

■ Driscoll next complains that he was denied effective assistance of counsel because his trial counsel did not object to the prosecutor's argument, in the punishment phase of Driscoll's capital murder trial, that a sentence other than death could lead to future danger to prison personnel where Driscoll would be confined. He also complains that the trial court denied him due process of law by failing to control the prosecutor so as to prevent that argument from being made to the jury.

The prosecutor argued that the death penalty was an appropriate verdict for the jury to reach in Driscoll's murder trial. The prosecutor asked what was to be done with Driscoll if the jury's punishment was life imprisonment without probation or parole for fifty years. He asked the jury how the guards were to be protected and characterized Driscoll as someone "who butchers people—who can't live outside and can't live inside."

Driscoll's trial counsel did not object to that part of the prosecutor's closing statement.

The hearing court found against Driscoll on this point finding that the prosecutor's argument was a general plea for law enforcement and was made to impress the seriousness of the case upon the jury.

Driscoll relies upon the holdings in other criminal cases that although the State may argue that a severe penalty should be imposed to deter others from criminal acts, the State may not argue that a severe punishment is necessary to deter the defendant on trial from committing other crimes in the future. He cites *State v. Raspberry,* 452 S.W.2d 169 (Mo.1970), for this proposition and *State v. Mobley,* 369 S.W.2d 576 (Mo.1963), for the proposition that due process of law required the hearing court to have imposed controls on the prosecutor to have prevented such arguments to the jury.

As noted in *State v. Antwine,* 743 S.W.2d 51, 71 (Mo. banc 1987), neither *Raspberry* nor *Mobley* involved a death penalty case which utilized a bifurcated proceeding for its guilt and punishment phases.

*Antwine* was a capital murder case in which one of the aggravating circumstances presented to the jury in its punishment phase was that the defendant committed murder in a place of lawful confinement. A similar argument was made to the jury in *Antwine* as was made in Driscoll's criminal trial, viz., that if the death penalty were, not imposed, Antwine would pose a danger to other inmates and correctional personnel. As in Driscoll's criminal trial, that argument was made during the punishment phase, after a verdict of guilty of capital murder had been returned. In *Antwine,* an objection to that argument was made and overruled. This Court held, as a matter of first impression as to that issue, that when the aggravating circumstance of murder committed by an inmate in a lawful place of confinement is present, "a jury may properly consider whether an incarcerated criminal defendant is likely to place the lives of corrections personnel and other prisoners at risk if a sentence other than death is imposed." *Antwine,* 743 S.W.2d at 71.

Driscoll's trial counsel cannot be found ineffective for failing to make a nonmeritorious objection. *Bannister v. State,* 726 S.W.2d 821, 825 (Mo.App.1987); *Shaw v. State,* 686 S.W.2d 513, 516 (Mo.App.1985).

The trial court's determination was not clearly erroneous. The circumstances in Driscoll's criminal trial were akin to those in *Antwine.* Under those circumstances, Driscoll was not denied due process of law by the court permitting the prosecutor to make the closing argument about which Driscoll now complains.

■ Driscoll next asserts that his trial counsel failed to present evidence during the punishment part of his criminal trial to show that he had saved the life of another inmate during a previous incarceration. He contends this constituted ineffective assistance of counsel and that the hearing court erred by finding otherwise.

The hearing court found that Driscoll's trial counsel testified at the evidentiary hearing that he was unaware that Driscoll had received any commendation for aiding another inmate until Driscoll testified to that effect at trial. The hearing court stated, in its findings, that the trial counsel testified that Driscoll had not told him about a commendation prior to the hearing. The hearing court further noted that Driscoll's counsel at the evidentiary hearing presented no proof that evidence of such a commendation existed.

The hearing court concluded that Driscoll had not demonstrated that such evidence, if it existed, would have benefitted him. That court found it to be "just as likely that additional evidence regarding the previous incarcerations of [Driscoll] would have only highlighted the fact that he was a career criminal. . . ." That court found that Driscoll failed to demonstrate that his trial counsel, through action or inaction, prevented him from presenting evidence which would have been helpful to him at trial and failed to show that the asserted inactions of counsel were of such character that it resulted in a substantial deprivation of right to a fair trial, citing *Thomas v. State*, 665 S.W.2d 621, 624 (Mo.App.1983).

The hearing court's determination that Driscoll failed to prove any deficiency in his trial counsel's performance with respect to this point is not clearly erroneous.

▆▆▆ Driscoll next asserts that his trial counsel was ineffective in that the counsel failed to impeach certain testimony of witness Joseph Vogelpohl.

Vogelpohl testified in the criminal trial. Vogelpohl was an inmate at the training center at the time of the riot. At trial, Vogelpohl testified that Driscoll had asked with respect to the stabbing of Officer Jackson, "Did I take him out JoJo, or did I take him out?"

During the evidentiary hearing on Driscoll's 27.26 motion, his trial counsel was asked about other statements alleged to have been made by Vogelpohl to a Mr. Schreiber and a Mr. Wilkinson to the effect Driscoll had said that Officer Jackson "had been stuck" or that Driscoll had "said something about took out one of the guards."

Both Wilkinson and Schreiber testified.

Wilkinson testified that he was a casework supervisor at the Training Center when the riot occurred. He had participated in an internal administrative hearing following the stabbing of Officer Jackson. Wilkinson testified that Vogelpohl had related a conversation with Driscoll in which Driscoll "said something about the fact— 'took out one of the guards.'" That statement was made at a hearing conducted eighteen days after the stabbing.

Schreiber testified that he was chief internal affairs officer with the Missouri Department of Corrections and Human Resources at the time of the riot. He had interviewed Vogelpohl after the riot. Schreiber testified that Vogelpohl had said that Officer Jackson had been stabbed. Vogelpohl had also provided Schreiber with a written statement in which Vogelpohl stated, "one of the officers, which was Officer Jackson, had been stuck."

The hearing court made a finding of fact that Driscoll's trial counsel did not attempt to impeach Vogelpohl with prior statements Vogelpohl had made to Schreiber or Wilkinson.[7] That court further found that the various statements of Vogelpohl were not directly inconsistent "because the terms 'took out' in prison slang means 'killed' and the term 'stuck' in prison slang means 'stabbed' and Officer Jackson was killed by stab wounds."

The hearing court concluded that any inconsistencies between Vogelpohl's trial testimony and the prior statements were "minor and inconsistent."

7. The hearing court found that:
   Robinson [trial counsel] did not attempt to impeach Vogelpohl with a prior statement made to Mark Shriver [sic] where in [sic] Vogelpohl said movant [Driscoll] had stated that "one of the

   officers, which was Officer Jackson, had been stuck." Neither did Robinson attempt to impeach Vogelpohl with another earlier statement made to Mr. Wilkinson that movant had "said something about took out one of the guards."

The hearing court's determination was not clearly erroneous. The record from the evidentiary hearing supports the hearing court's interpretations of the words "took out" and "stuck." Using those meanings, there was no showing that Vogelpohl had made prior inconsistent statements which Driscoll's trial counsel could have used to impeach Vogelpohl's testimony at trial. Driscoll's trial counsel was not deficient in failing to attempt to impeach Vogelpohl's testimony by means of prior inconsistent statements. There was no showing that Vogelpohl had made prior inconsistent statements.

For his final point on appeal, Driscoll asserts ineffective assistance of counsel for "failure to object to certain trial error, assert said error in a motion for new trial, and present said grounds on appeal...." He then references various paragraphs in his Rule 27.26 motion contending that those issues were not presented to the trial court in the motion for new trial or to this Court on the direct appeal. He asserts that he was denied review of those points or that they received "only plain error review."

The complaints made in Driscoll's final point include matters previously addressed in this opinion. Driscoll includes the issues previously discussed with respect to Juror Harris; the arguments made to the jury by the prosecutor regarding the capital sentencing process and the relative responsibilities of the jury and the court; the content of questions by the prosecutor during trial, forms of objections posed by the prosecutor and some of the prosecutor's closing argument; and, the argument by the prosecutor that to impose punishment other than death would present future risk to others within the prison system.

These issues were previously discussed and determined adversely to Driscoll.

Driscoll's final point on appeal does refer to two areas not otherwise presented in this appeal. He contends the hearing court erred in not finding ineffective assistance of counsel by trial counsel failing to object and raise in the motion for new trial issues relating to inquiry on *voir dire* of Juror McIntosh and to certain trial testimony of witness Edward Rugg.

Driscoll contends that his trial counsel should have challenged Juror McIntosh for cause based upon answers given during voir dire. Driscoll contends that Juror McIntosh gave responses to questions posed on *voir dire* indicating "that she would automatically recommend the death penalty in the event of a finding of guilty of capital murder."

At Driscoll's trial, during *voir dire*, his trial counsel asked a general question to the panel which invoked a response from Juror McIntosh. The following exchange occurred:

MR. ROBINSON [trial counsel]:

Another thing that Mr. Finnical [prosecutor] did not tell you is that in the first stage of the trial, it is possible that you could find—although my client is charged with Capital Murder, if you do not find that he's guilty of Capital Murder, you could find him guilty of a lesser crime.

Are you willing to consider a lesser crime of Murder or Manslaughter if the facts only support Murder or Manslaughter and not Capital Murder?

Mrs. McIntosh?

VENIREPERSON McINTOSH: I think I would.

MR. ROBINSON: You say you think you would. I don't want to badger you, but why are you hesitating?

VENIREPERSON McINTOSH: Well if he committed the crime, then he should be punished with the death penalty. If he didn't, then that's another situation.

MR. ROBINSON: But what if the State doesn't prove that he committed Capital Murder, but he might have—the State might only be able to prove that he committed a lesser crime.

VENIREPERSON McINTOSH: Such as what?

MR. ROBINSON: Second Degree Murder—Manslaughter. If the facts only support a lesser crime, would you still vote for guilty on Capital Murder?

VENIREPERSON McINTOSH: All right. No—no.

The part of this exchange about which Driscoll now complains are the following responses. "Well, if he committed the crime, then he should be punished with the death penalty. If he didn't, then that's another situation." Driscoll complains that no challenge for cause was then made to Juror McIntosh.

The hearing court concluded that when Juror McIntosh's responses are considered in the context of other responses she gave during *voir dire*, there was no showing that she would indiscriminately impose the death penalty nor that she would be unable to follow the instructions of the court nor be unable to consider penalties other than the death penalty if the defendant in the criminal case was convicted of capital murder.

Prior to the exchange on *voir dire* quoted above, other inquiries had been made about the death penalty.

During inquiry by the prosecutor, specific questions were directed to Mrs. McIntosh. After stating the burden of proof in criminal cases to be beyond a reasonable doubt and inquiring whether the panel members understood that the same burden of proof applied in cases in which the death penalty is a possible punishment, Juror McIntosh was asked: "Now, what do you think of the death penalty?"

Mrs. McIntosh replied: "I think if it's justified, it should be given."

■ The record from Driscoll's criminal trial does not establish that Driscoll was entitled to have a challenge for cause sustained as to Juror McIntosh if such a challenge had been made. Compare *State v. Johns*, 679 S.W.2d 253, 263–65 (Mo. banc 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). "If there was no trial error, counsel cannot have been ineffective for failure to pursue it." *Bannister v. State*, 726 S.W.2d 821, 825 (Mo. App.1987).

Considering all of Juror McIntosh's responses to questions addressing the death penalty and its applicability, the conclusion by the trial court that Driscoll's trial counsel was not deficient so as to deny Driscoll effective assistance of counsel by not challenging Juror McIntosh for cause is not clearly erroneous.

■ Driscoll also asserts that he was denied effective assistance of counsel because his trial counsel did not timely object to certain testimony of witness Edward Rugg.

Rugg was an inmate at the Missouri Training Center for Men at the time of the riot.

Rugg testified that he saw Driscoll stab Officer Jackson. He was interrogated on two occasions following the stabbing. Rugg had told investigators at the correction center that he saw Driscoll stab Officer Jackson. Rugg was asked what he told investigators the second time he was questioned. He responded:

A. [Rugg] Virtually the same thing I told them the first time when they called me back the second time. They was trying to tell me that they didn't believe my story. But when I told them the same thing again and then when they brought me back the second time, they said they believed me then because they had talked with Mr. Driscoll and he had confessed to it.

The prosecutor began asking a further question which Driscoll's trial counsel interrupted to object to Rugg's response as hearsay and to ask that it be stricken.

The trial court overruled the motion and denied the request to strike saying that the question had been asked and answered and that time had passed for the objection.

Driscoll contends the failure of his trial counsel to timely object denied him effective assistance of counsel. The hearing court concluded that Rugg's statement was volunteered by the inmate, was inadvertent and isolated. The hearing court concluded that there was no evidence that the testimony prejudiced the outcome of the trial and that the failure to object "did not rise to constitutional proportions" and, at most, was trial error which cannot be raised in proceedings for postconviction relief, citing *Hudson v. State*, 612 S.W.2d 375, 378 (Mo.

App.1980), and *Joiner v. State*, 621 S.W.2d 336, 338 (Mo.App.1981).

The hearing court's conclusion with respect to this issue is not clearly erroneous.

■ Lastly, Driscoll asserts that he did not receive effective assistance of counsel on appeal. Driscoll complains that the attorney who handled his direct appeal failed to raise issues presented by his post-trial motion for new trial.

At evidentiary hearing, the attorney who handled the direct appeal testified that she elected to pursue the issues which she evaluated as being meritorious.[8] The hearing court found that action was a matter of "strategic choice" by Driscoll's attorney.

Our review of this case, including a review of the transcript filed with this Court in Driscoll's direct appeal, does not show denial of effective assistance of counsel on the direct appeal of Driscoll's criminal case.

The judgment of the hearing court is affirmed.

BILLINGS, C.J., and WELLIVER, RENDLEN and HIGGINS, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

DONNELLY, J., retired January 1, 1989.

ROBERTSON, J., not sitting.

COVINGTON, J., not participating because not a member of the Court when the cause was submitted.

BLACKMAR, Judge, concurring.

The Court is indebted to Judge Parrish for his fine opinion, in which I concur.

The principal opinion gives more weight than I would to the holding on initial appeal about the effect of possibly objectionable argument. My examination of the trial transcript persuades me, however, that counsel was not ineffective in his handling

of a case in which the defense was very difficult.

---

8. A record was made as to this issue at the evidentiary hearing on the Rule 27.26 motion so as to permit the issue to be reviewed as part of this appeal.