Connie Lynn **FLOWERS**,
Movant–Appellant,

v.

**STATE** of Missouri, Respondent.

No. 16013.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 30, 1989.

John P. Heisserer, Richey, Price, Rice, Spaeth and Heisserer, Cape Girardeau, for movant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Chief Judge.

Movant Connie Lynn Flowers was convicted of first degree murder, § 559.005,[1] and sentenced by the trial court to life imprisonment without parole for fifty years, § 559.011. The conviction was affirmed on appeal. *State v. Flowers,* 592 S.W.2d 167 (Mo. banc 1979).

On November 1, 1982, movant filed a motion for post-conviction relief under former Rule 27.26.[2] But for the disqualification of one judge, the retirement of a second, the filing of a first and second amended motion for relief under Rule 27.26, and the filing of movant's motion for partial summary judgment, the case languished until June 28, 1988. That day an evidentiary hearing was held. On October 6, 1988, the trial court entered judgment denying movant's motion for relief under Rule 27.26 and the motion for partial summary judgment. The trial judge made extensive findings of fact and conclusions of law.

---

**1.** In this opinion the following statutory references are used: § 559.005, RSMo Supp.1975, *repealed,* H.B. 90 § A, Laws, Mo.1977, p. 718 (effective May 26, 1977); § 559.007, RSMo Supp.1975, *repealed,* H.B. 90 § A, Laws, Mo.1977, p. 718 (effective May 26, 1977); § 559.009, RSMo Supp.1975, *repealed,* H.B. 90 § A, Laws, Mo.1977, p. 718 (effective May 26, 1977); § 559.011, RSMo Supp.1975, *repealed,* H.B. 90 § A, Laws, Mo.1977, p. 718 (effective May 26, 1977); § 565.001, RSMo Supp.1977, *repealed,* S.B. 276 § 1, Laws, Mo.1983, p. 922 (effective July 1, 1984); § 565.003, RSMo Supp.1977, *repealed,* S.B. 276 § 1, Laws, Mo.1983, p. 922 (effective July 1, 1984); § 565.008, RSMo Supp. 1977, *repealed,* S.B. 276 § 1, Laws, Mo.1983, p. 922 (effective July 1, 1984).

**2.** All references to Rule 27.26 are to Missouri Rules of Court (13th ed. 1982).

On appeal movant raises three points. She claims the trial court should have granted her motion for partial summary judgment and corrected her sentence of life imprisonment without parole for fifty years because the punishment exceeds the punishment provided by statute. The second point is that the evidence showed movant's attorney in the underlying case (defense counsel) was ineffective in failing to investigate, interview and call certain alibi witnesses. Her third point claims that defense counsel was ineffective in (1) failing to object to jurisdictional defects in the complaint upon which the warrant for her arrest was based, (2) failing to present evidence to the jury regarding the credibility of the state's informant, (3) failing to disqualify the trial judge, (4) allowing the admission of polygraph evidence, and (5) allowing the admission of unfounded expert testimony, and "other errors."

On February 20, 1977, the body of James Bundy was found in a ditch beside a gravel road. The victim had been shot three times through the head.

Movant was arrested on May 8, 1978, in California. She was questioned on three occasions. The first session was in Tulare County, California. On that occasion movant denied any knowledge of the murder. During the second questioning session, she admitted her presence at the scene of the crime. At a third questioning session, movant admitted her participation in the crime. The statements were recorded on tape. Defense counsel was unsuccessful in his efforts to suppress her confession. At movant's trial, portions of the tape recordings were played for the jury. That being the case, counsel's backup strategy was a defense of alibi. The alibi evidence tended to support a defense claim that movant was in Florida when the crime was committed. The alibi witnesses were James and Vivian Brewer. The Brewers claimed they hired movant and Arvin Garrett, movant's codefendant and common law husband, to pick fruit on February 19 through February 23, 1977. Along with that strategy, the defense hired two physicians. They testified that movant's personality was such that she could not have committed the violent act she had confessed to, and, therefore, the tape-recorded confessions were unworthy of belief. Other facts will be discussed as needed in addressing movant's points.

The standard of review in a Rule 27.26 proceeding is "limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous." *Jones v. State,* 767 S.W.2d 41, 43 (Mo. banc 1989); Rule 27.26(j). The findings, conclusions, and judgment of the trial court are clearly erroneous only if, after a review of the entire record, this court is left with a definite and firm impression that a mistake has been made. *Casey v. State,* 769 S.W.2d 829, 832 (Mo.App.1989).

Movant's first point claims her sentence exceeds the punishment provided by statute for her crime. To understand the argument under the first point requires a discussion of some of the turbulence in Missouri's homicide statutes.

The date of the Bundy murder was February 20, 1977. Section 559.005, in effect at the time, provided as follows: "A person is guilty of capital murder if he unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of a human being." The only punishment for that offense was death. § 559.009.3.

The legislature, anticipating the potential unconstitutionality of a mandatory death penalty, had enacted § 559.011 which provided that if capital murder, or the penalty for that crime, was declared unconstitutional, "all killings which would be capital murder ... shall be deemed to be murder in the first degree," except the offender's punishment was to be life imprisonment without eligibility for parole for fifty years. Another statute in effect at the time provided that an unlawful, but unpremeditated, killing committed in the perpetration of arson, rape, robbery, burglary or kidnapping was murder in the first degree. § 559.007.

On March 15, 1977, the Missouri Supreme Court held that the penalty provisions for capital murder failed to provide a constitutionally acceptable procedure for imposing the death penalty. *State v. Duren,* 547 S.W.2d 476, 480 (Mo. banc 1977).

The court went on to say that even though "capital" murder was a misnomer, there is no prohibition against that designation of the crime. *Id.* at 481. The contingency penalty provided for in § 559.011 was approved. *Id.*

Effective May 26, 1977, § 559.005 was repealed and § 565.001 was enacted. The latter statute, in essentially the same language as the former, defined "capital murder." Section 559.007, defining "first degree murder" was also repealed and, with a little reorganization of the wording, reenacted as § 565.003. The mandatory death penalty provision, declared unconstitutional by *Duren*, was also repealed. The reenactment provided a procedure under which "capital murder" was made punishable by death or imprisonment for life without probation or parole for fifty years. § 565.008.1. The penalty for first degree murder, that is the unlawful but unpremeditated killing of a person during the perpetration of specified felonies, was made punishable by life imprisonment. § 565.008.2.

Movant was charged and tried in 1978. The information charged her with elements of the crime condemned in § 559.005. The verdict-directing instruction also required a finding of the elements of the same crime. *See* MAI–CR 6.02. The information alleged and the instruction required a finding that Bundy's murder was premeditated and made no mention that the murder occurred during the perpetration of any other felony. The verdict and the court's judgment and sentence all used the term "murder in the first degree" to describe movant's offense. With that background, we return to movant's argument.

Movant correctly states that there was no language in the 1977 revision authorizing life imprisonment without probation or parole for fifty years for the crime of first degree murder. She directs our attention to the judgment and sentence which states that she was found guilty of murder in the first degree. She points out that if the penalty for an offense is reduced or lessened by alteration of the law creating the offense prior to final disposition of the case, the punishment must be assessed according to the amendatory law. *State v. Reiley*, 476 S.W.2d 473, 474 (Mo.1972); § 1.160, RSMo 1969.

The fundamental flaw in movant's argument is her claim that the offense of which she was convicted was "first degree murder" as defined in either § 559.007 or § 565.003. *Duren* changed the title of her crime, but it did not modify the elements of the crime. The offense with which she was charged, of which she was convicted, and for which she was sentenced was that defined in § 559.005. She is correct that the punishment for her crime was modified by the May 26, 1977 amendment. But the modification did not reduce the punishment for the offense defined in § 559.005; it added the possibility of the death penalty. Movant's first point lacks merit.

In movant's second and third points, she claims defense counsel was ineffective. To establish ineffective assistance of counsel, movant must show that counsel's performance was deficient, and that the deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prevail movant must satisfy both the performance prong and the prejudice prong on a claim of ineffective assistance of counsel. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Finally, movant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. *See also Sanders v. State, supra*, at 858. With these standards in mind, we examine movant's second and third points.

■ In her second point movant claims defense counsel failed to "investigate, interview and call certain alibi witnesses." The first witness she claims was overlooked was Hugh Carter. It was stipulated at the post-conviction hearing that had Carter testified, he would state that movant and Arvin Garrett worked for him through February 16, 1977, and that they were paid on February 18, 1977. The motion court found that Carter's testimony would not rule out a "rapid, round trip to Missouri

from Florida" in time to commit the murder on the 19th or 20th of February. Carter's testimony would not have provided a viable defense. Therefore, the attorney's failure to interview or call Carter could not serve as a basis for a claim of ineffective assistance of counsel. *Abercrombie v. State,* 759 S.W.2d 95, 97 (Mo.App.1988).

■ Movant also complains that David and Kitty McCann were not interviewed or called. The McCanns gave depositions in which they each indicated that movant and her codefendant lived with them during the period they worked first for Hugh Carter and then James Brewer. Neither could remember the exact dates. Defense counsel had a somewhat different recollection. His records indicated that the McCanns' testimony would corroborate statements made by movant in her taped confession and would have been "totally devastating to [movant's] defense." Defense counsel further stated that he consulted with movant prior to deciding not to call the McCanns, and movant agreed with his recommendation. The strategic decision not to call the McCanns cannot form the basis of a claim of ineffective assistance of counsel.

■ Movant's brief claims there were other witnesses who should have been interviewed and called. Among those witnesses are members of the family of James and Vivian Brewer. Movant now claims that testimony of the other members of the Brewer family would have bolstered the testimony of James and Vivian. At best, their testimony would have been cumulative, and failure to introduce cumulative testimony does not constitute ineffective assistance of counsel. *Robinson v. State,* 760 S.W.2d 516, 517 (Mo.App.1988).

■ Other witnesses not called included David Frazier and Arvin Garrett. David Frazier is movant's brother. Arvin Garrett was movant's common-law husband and codefendant. Defense counsel testified that he was aware of the substance of their testimony, but because Frazier and Garrett were both convicted murderers, he recommended not calling them as witnesses. Movant agreed.

■ Two other witnesses who movant claims were not investigated or called are Donnie Frazier and Annette Parr. According-ing to defense counsel, movant insisted that her brother Donnie Frazier not be called. He was accused of the same crime as movant. Annette Parr met movant in the penitentiary and then told her that Bundy's widow had confessed to killing Bundy. It is unclear whether the confession occurred before or after movant's trial. Movant has failed to prove that Annette Parr could have been located and would have testified if called at trial. Having failed in that proof, defense counsel will not be adjudged ineffective. *Abercrombie v. State, supra.*

■ Movant's third point asserts that defense counsel was ineffective in five different ways. The first is that the original affidavit upon which the warrant for movant's arrest was obtained failed to allege a necessary element in the body of the complaint. She argues that the absence of the word invalidated the warrant under which she was arrested, and under the "fruits of the poisonous tree" doctrine, her confessions were therefore inadmissible. The original complaint and warrant do not contain the word "knowingly." However, from the record and testimony of defense counsel we glean that the word "knowingly" was added by amendment just before the preliminary hearing. The omission of the word "knowingly" does not make an information insufficient. *State v. Garrett,* 595 S.W.2d 422, 432–33 (Mo.App.1980). Accordingly, the absence of the same word from a complaint does not invalidate a warrant issued on the complaint. Even if the arrest was invalid, which we reject, the question to be answered where a custodial confession is at issue is not whether the arrest was valid, but whether the confession is the product of a free will. *State v. Johnson,* 530 S.W.2d 690, 693 (Mo. banc 1975). That question was decided against movant in the direct appeal. *State v. Flowers, supra,* at 170.

■ The second argument is that defense counsel should have objected to testi-

mony of the prosecutor. Here the prosecutor testified that he operated a tape recorder during one of movant's interviews and that his office made a transcript of the recording which he checked for accuracy. The tape was played to the jury. The testimony was on a merely formal matter which was uncontested. Nothing the prosecutor said indicated he had any "special knowledge" of movant's guilt. While it is true that an attorney should withdraw from the case if he is likely to be needed as a witness, it does not follow that a prosecutor must withdraw whenever his testimony becomes necessary on some minor matter due to the circumstances of the case. *State v. Hayes,* 473 S.W.2d 688, 691–92 (Mo.1971). Had defense counsel objected, the objection would have been meritless.

■ The third argument under the third point is the claim that counsel made no attempt to present evidence regarding the state's informant's motivation for accusing movant of murder. The informant against her was her codefendant. The codefendant did not testify at her trial. Accordingly, movant could not have been prejudiced by failure to present evidence regarding "bad blood" between her and the codefendant.

■ Movant's fourth claim under the third point is that defense counsel was ineffective in failing to disqualify the trial judge. Movant bases this complaint on the fact that the judge asked three questions in order to clarify a part of one of the alibi witnesses' testimony. Upon objection, the questioning halted. A trial judge may ask questions as long as he does not abandon neutrality. *State v. Farmer,* 536 S.W.2d 748, 750–51 (Mo.App.1976). The three innocuous questions asked in this case do not indicate partiality or prejudice by the judge. Had counsel moved to disqualify the judge, the motion would have properly been denied. Counsel cannot be convicted of ineffective assistance for failure to make a meritless objection.

■ Movant's next argument is that defense counsel was ineffective in allowing the admission of damaging polygraph evidence. Results of polygraph examinations are not admissible because their reliability

cannot be verified. *State v. Mahany,* 748 S.W.2d 762, 764 (Mo.App.1988). No evidence even suggesting the results of a polygraph examination was presented during the trial. There was mention of a polygraph. The first comment occurred in a taped statement made when movant was first arrested. After denying having anything to do with the murder, the interrogating officer asked movant:

Q: Okay, let me ask you this, ... would you take a lie detector test if you didn't have anything to do with this murder?

A: Sure will.

. . . .

Q: But you deny any of the allegations about the homicide of Mr. Bundy?

A: I shore do.

Q: And you would take a polygraph examination to that?

A: Yeah.

At trial movant took the stand in her own behalf. The following occurred during her cross-examination:

Q: You told these officers in California you were telling them the truth there, didn't you?

A: I told them the truth the first time whenever I denied any knowledge of it.

Q: I mean all along, you told them all you told them was the truth, even the last part?

A: Yes, sir.

Q: Then at the county jail, you told us that what you told over there was the truth?

A: Yes, sir, and if they give me a lie detector test I would take it the second time and it would show I was telling the truth, and the second time I told you I wasn't.

Q: Weren't you given another test?

THE COURT: Wait a minute. Do not answer that question. Next question. . . .

. . . .

Q: Now, you're telling this jury here today that you're telling the truth now?

A: Yes, sir; and if you want me to take your lie detector test, I'll take it, it will show I didn't kill that guy.

Q: We have the best lie detector in the world right here, the American jury.

[DEFENSE COUNSEL]: Your Honor, let him save that for closing argument.

THE COURT: Sustained; ....

The evidence did not show that movant either refused to take a polygraph or failed a polygraph examination. Accordingly, movant has failed to establish any prejudice flowing from defense counsel's failure to object.

■ The fifth complaint under the third point is that counsel was ineffective in allowing the admission of unfounded expert testimony. The testimony to which she refers is that of a highway patrolman regarding spent bullets found at the crime scene. The patrolman obviously was not qualified as a ballistics expert. Defense counsel was questioned regarding why he did not object to the insufficient foundation. He testified that the caliber of the bullet was not relevant to the defenses being raised. He pointed out that, "[T]here's very little to be gained by making a point that this trooper sitting on this witness stand in uniform, who is impressive to the jury, to come up and try to punch holes in his testimony on what is really not an important issue." Defense counsel was present at the codefendant's trial sometime earlier. He also had available the lab reports and was aware that the caliber of the bullet could be easily proved had an objection been raised. We conclude that counsel's conduct was well within the range of reasonable trial strategy. *Driscoll v. State*, 767 S.W.2d 5, 11 (Mo. banc 1989).

None of movant's points are meritorious. The court's denial of the Rule 27.26 motion is affirmed.

CROW, P.J., and GREENE, J., concur.